*18*

IN THE UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 1 3 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL NO. B-01-053 |
| GRADY F. HEROLD, SR., Individually and<br>in his capacity as Independent Executor of<br>the Estate of Lillian A. Schwarz (deceased);<br>KATHRYN LOUISE HEROLD; RUBY L.<br>WELLS; DORIS JEAN SHANNON;<br>CAMERON COUNTY, TEXAS; LAGUNA<br>MADRE WATER DISTRICT; CAMERON<br>COUNTY EMERGENCY SERVICES;<br>SOUTHMOST UNION JR. COLLEGE<br>DISTRICT; POINT ISABEL I.S.D.; TOWN<br>OF SOUGH PADRE ISLAND; SOUTH<br>TEXAS I.S.D; CAMERON COUNTY<br>APPRAISAL DISTRICT; STATE OF TEXAS;<br>AND LEGENDARY, INC.<br>Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

## ORIGINAL ANSWER OF DEFENDANT LEGENDARY, INC. TO
## UNITED STATES OF AMERICA COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, LEGENDARY, INC., Defendant ("Legendary") appearing by its

undersigned counsel and files this original Answer and in support of such pleading would

show the following:

ORIGINAL ANSWER OF DEFENDANT LEGENDARY, INC. TO
UNITED STATES OF AMERICA COMPLAINT

Page 1

c:\dcg\cf\Legendary\US-Complain-Answer

## I.  Background

1.     Legendary entered into an agreement with the Estate of Lillian A. Schwarz (the "Estate") for the purchase of certain property located in South Padre Island, Texas (the "South Padre Island Property") which is encumbered by a mortgage held by the United States of America and which is the subject of a foreclosure action in this Case.  A copy of the contract between the Estate as Seller and Legendary as Buyer is attached hereto as **Exhibit A**.

2.     After beginning its due diligence, it quickly became apparent to Legendary that the South Padre Island Property was not developable and therefore had very little value in its present state.  Prior to any development of the South Padre Island Property, any party would be required to resolve numerous regulatory matters including, without limitation, those relating to wetlands jurisdiction, those relating to bulkhead laws, zoning and other environmental laws which were applicable to the South Padre Island Property.

3.     It was also apparent to Legendary that the regulatory issues described above could not be resolved without substantial expenditures of time and funds by any potential acquirer of the South Padre Island Property and that the resolution of those issues would likely consume a year or more of effort.

4.     Legendary was in the process of negotiating with the Estate for a modification of the Purchase Agreement described above pursuant to which Legendary would put up the money and professional labor necessary to seek to resolve those regulatory issues in an effort to create value for the South Padre Island Property.

5.     Those negotiations between Legendary and the Estate have been put in suspense as a result of the present action.

6.     Legendary continues to be willing to work out an arrangement with the appropriate party for Legendary's acquisition of the South Padre Island Property subject to the conditions precedent of resolution of the regulatory issues described above.

## II.  Answers

7.     Legendary admits the allegations that the United States has a federal tax lien for federal estate tax liability which attaches to the South Padre Island Property in which Legendary holds an interest and that the United States' lien is superior to any rights in that Property by Legendary.

8.     Except to the extent already admitted, Legendary is without knowledge of information sufficient to form a belief about the truth of the remaining allegations contained in the Complaint of the United States of America.   However, to the extent this Court requires admission or denial of the allegations, Legendary denies every allegation in the Complaint except to the extent already admitted.

WHEREFORE, Legendary, Inc. requests:

1.     That this Court determine the validity of all liens and claims of the various parties named herein against the South Padre Island Property and determine priority of all respective interests in such Property; and

2.     That this Court afford such further relief as this Court shall deem proper.

Respectfully submitted,

DAVID C. GARZA
Federal Admission No. 3778
Texas Bar No. 07731400
GARZA & GARZA, L.L.P.
P.O. Box 2025

680 East St. Charles, Suite 300
Brownsville, Texas 78522
Phone: (956) 541-4914
Fax:    (956) 542-7403

*ATTORNEY-IN-CHARGE FOR DEFENDANT
LEGENDARY, INC.*

ORIGINAL ANSWER OF DEFENDANT LEGENDARY, INC. TO
UNITED STATES OF AMERICA COMPLAINT

**Page 4**

c:\dcg\cl\Legendary\US-Complain-Answer

## Certificate of Service

I, David C. Garza , do hereby certify that a true copy of the foregoing Original Answer of Defendant Legendary, Inc. to the United States of America's Complaint has been sent via certified U.S. Mail, return receipt requested on this _13 th_ day of June, 2001 to the following:

Manuel P. Lena, Jr.      *CERTIFIED MAIL/RRR*
Andrew Sobotka       *NO. 7000 1670 0005 7134 2096*
U.S. Department of Justice
  Tax Division
717 North Harwood, Suite 400
Dallas, Texas 75201

David Randell, Asst. Attorney General  *CERTIFIED MAIL/RRR*
Office of the Attorney General of   *NO. 7000 1670 0005 7134 2089*
  The State of Texas
Bankruptcy & Collections Division
P.O. Box 12548
Austin, Texas 78711-2548

Larry Sherlock       *CERTIFIED MAIL/RRR*
Chamberlain Hrdlicka White    *NO. 7000 1670 0005 7134 2072*
WILLIAM & MARTIN, APPC
1200 Smith Street, Suite 1400
Houston, Texas 77002-4401

Kent M. Rider        *CERTIFIED MAIL/RRR*
LINEBARGER, HEARD, GOGGAN  *NO. 7000 1670 0005 7134 2065*
  BLAIR, GRAHAM, PEÑA & SAMPSON
P.O. Box 17428
Austin, Texas 78760

Cullen R. Looney       *CERTIFIED MAIL/RRR*
Attorney-At-Law       *NO. 7000 1670 0005 7134 2058*
P.O. Box 118
Edinburg, Texas 78540-0118

DAVID C. GARZA

ORIGINAL ANSWER OF DEFENDANT LEGENDARY, INC. TO
UNITED STATES OF AMERICA COMPLAINT          Page 5

c:\dcg\c1\Legendary\US-Complain-Answer

CUtePDF – www.tesisx.com

401-8125

# REAL ESTATE CONTRACT

STATE OF TEXAS      §

COUNTY OF CAMERON    §

      THIS CONTRACT OF SALE is made by and between the ESTATE OF LILLIAN A. SCHWARZ by GRADY F. HEROLD, SR., INDEPENDENT EXECUTOR, P. O. Box 584, Mercedes, Texas 78570-0584, referred to in this Contract as "Seller"; joined by KATHRYN LOUISE HEROLD, P. O. Box 393, Mercedes, Texas 78570-0393, DORIS JEAN SHANNON, ~~Greenhouse Patio~~ Apts. No. 823, 2400 Old South Drive, Richmond, Texas 77469, PEGGY LORRAINE BIRCH, 2360 Anise, El Paso, Texas 79936, and RUBY LEE WELLS, 912 West 9th, Weslaco, Texas 78596, referred to in this Contract as "Beneficiaries of the Estate of Lillian A. Schwarz, Deceased," said Beneficiaries joining in this Contract for the limited purpose of consenting to and authorizing the Estate to enter into and execute and consummate this Contract and sale, but Beneficiaries shall not be responsible for, or liable for performance under this Contract, and LEGENDARY, INC., 385 Highway 98 East, Suite 60, Destin, Florida 32541, referred to in this Contract as "Purchaser," upon the terms and conditions set forth in this Contract.

*[handwritten annotation in left margin: "Old South Grand"]*

## ARTICLE I

## PURCHASE AND SALE

      By this Contract, Seller sells and agrees to convey via a Deed with Special Warranty, and Purchaser purchases and agrees to pay for, the tract of land containing approximately 21.83 acres of land situated in Cameron County, Texas, being more particularly described in Exhibit "A" attached to and incorporated in this Contract by reference for all purposes, together with all and singular the rights and appurtenances pertaining to the property, including, without limitation, littoral rights, if any, and any right, title and interest of Seller in and to adjacent streets, alleys, rights-of-way, approved permits, and licenses (issued by any person, public or private) consent agreements and any other rights or claims relating to the Property, save and except all prior reservations of oil, gas, and other minerals, and subject to easements, rights-of-way, and prescriptive rights of record as of the date hereof; all presently recorded instruments, other than liens and conveyances, that affect the Property; taxes for the year 2001, the payment of which Purchaser shall assume; (all of such real property, rights, and appurtenances being referred to in this Contract as the "Property"), together with any improvements, fixtures, and personal property situated on and attached to the Property, and any and all claims, licenses, and permits associated with the Property.

*[handwritten: Exhibit "A"]*

Page -1-

CAMPDF - www.texla.com

Date 747-6-2003   Docketed in TXSD on 06/13/2001   Page 7 of 24

# ARTICLE II

## PURCHASE PRICE

### Amount of Purchase Price

2.01    The purchase price for the Property shall be FIVE MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($5,500,000.00).

### Payment of Purchase Price

2.02    The Purchase Price shall be payable as follows:

Payable at closing in immediately available funds shall be the amount of FIVE MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($5,500,000.00).

# ARTICLE III

## PURCHASER'S OBLIGATIONS

### Conditions to Purchaser's Obligations

The obligations of Purchaser hereunder to consummate the transaction contemplated hereby are subject to the satisfaction of each of the following conditions (any of which may be waived in whole or in part by Purchaser at or prior to the closing):

3.01    No Adverse Change. No material adverse change shall have occurred with respect to the Property or its ability to be utilized for Seller's intended purposes between the Date hereof and the Closing Date including, without limitation, any proposed or enacted change to the existing zoning of the property (except such changes as requested by Purchaser), any moratorium or similar prohibition or restriction upon building permits, water, sewer or other necessary utility services to the Property, or any other proposed or enacted governmental regulation which would affect the existing permitted uses of the Property.

3.02    Preliminary Title Report.  Within fifteen (15) days after the date hereof, Seller, at Seller's sole cost and expense, shall have caused the Title Company to issue and deliver to Purchaser an Owner's Title Policy Commitment (the "Title Report") accompanied by copies of all recorded documents relating to easements, rights-of-way, etcetera, affecting the Property, which Title Report shall commit to insure Purchaser's title to the full amount of the Purchase Price upon consummation of the transaction contemplated by this Agreement.

3.03    Survey.  Purchaser may, at Purchaser's cost, cause the property to be surveyed (the Survey).  Purchaser shall deliver a copy of the survey to Seller.

3.04    Objection to Title.  Purchaser shall give Seller written notice of objections to

*Exhibit A*  Page -2-

Document ... in TXSD on 06/13/2001    Page 8 of 24

the condition of title as revealed by the Title Report and Survey on or before the expiration of forty-five (45) days after the date of this Contract. If Purchaser fails to object to the Title Report or survey within the time specified herein, then the condition of title shall be deemed to be acceptable and any objection thereto shall be deemed to have been waived for all purposes. In the event Purchaser states that the condition of title as set forth in the Title Report or survey is not satisfactory, Seller may, at Seller's option, promptly undertake to eliminate or modify all unacceptable matters to the reasonable satisfaction of Purchaser In the event Seller chooses not to or is unable to do so within fifteen (15) days after receipt of written notice, Seller shall notify Purchaser in writing of such matters that Seller is unable or unwilling to eliminate or cure, in which event Purchaser may terminate this Contract and thereupon the Earnest Money Deposit shall be refunded to Purchaser, and Seller and Purchaser shall be released from further obligations under this Contract.

3.05    Inspection and Investigation.    Purchaser, at Purchaser's sole cost and expense, shall have through and until 5:00 p.m., South Padre Island, Texas time, on February 7, 2001 ("the Inspection Period"), within which to conduct any and all feasibility and physical studies of the Property which Purchaser deems necessary or desirable. In the event that Purchaser finds any aspect of the Property unacceptable in Purchaser's sole and absolute discretion, Purchaser shall have the right to terminate this Contract by giving written notice of termination to Seller on or before the expiration of the Inspection Period, whereupon, after the return to Purchaser of the Earnest Money Deposit, this Contract shall be rendered null and void and neither party hereto shall have any right or obligation hereunder. In the event that Purchaser does not elect to so terminate this Contract, then Purchaser shall deposit the Additional Earnest Money with the Title Company prior to the expiration of the Inspection Period.    PURCHASER HEREBY EXPRESSLY ACKNOWLEDGES AND AGREES THAT PURCHASER HAS OR WILL HAVE, PRIOR TO THE END OF THE INSPECTION PERIOD, THOROUGHLY INSPECTED AND EXAMINED THE PROPERTY TO THE EXTENT DEEMED NECESSARY BY PURCHASER IN ORDER TO ENABLE PURCHASER TO EVALUATE THE PURCHASE OF THIS PROPERTY. PURCHASER HEREBY FURTHER ACKNOWLEDGES AND AGREES THAT PURCHASER IS RELYING SOLELY UPON THE INSPECTION, EXAMINATION, AND EVALUATION OF THE PROPERTY BY PURCHASER AND THAT PURCHASER IS PURCHASING THE PROPERTY ON AN "AS IS," "WHERE IS" AND "WITH ALL FAULTS" BASIS, WITHOUT REPRESENTATIONS, WARRANTIES OR COVENANTS, EXPRESS OR IMPLIED, OF ANY KIND OR NATURE; PROVIDED, HOWEVER, NOTHING CONTAINED IN THIS PARAGRAPH SHALL LIMIT THE WARRANTIES OF TITLE SET FORTH IN THE SPECIAL WARRANTY DEED TO BE DELIVERED FROM SELLER TO PURCHASER AT THE CLOSING. Seller agrees to cooperate fully with Purchaser in all of Purchaser's reasonable requests relating to obtaining permits, licenses, zoning modifications, and similar governmental authorizations and consents relating to the property; provided however, that all costs thereof shall be borne by Purchaser.

3.06    Repair and Indemnity.    Purchaser agrees to repair any and all damage caused to the Property arising or resulting from such inspections, and to indemnify and hold Seller harmless from all claims or costs arising or resulting from such inspections The provisions of this Paragraph shall survive and be enforceable by Seller after any termination of this Contract. All studies and examinations performed by Purchaser that

Exhibit "A"        Page 3-

Case 7:01-cv-00123 Document 76 Filed in TXSD on 06/13/2001 Page 9 of 24

yield data and information pertaining to the Property, and such data and information is hereinafter referred to as "Work Product". Should Purchaser fail to close the Contract for any reason other than Seller's default, then Purchaser shall deliver all such Work Product to Seller and Purchaser shall assign its rights in such Work Product to Seller. Such Work Product generally includes, but is not limited to (1) Traffic studies, (2) Engineering Studies, (3) Architectural Plans and Specifications, (4) Building Cost Analysis, (5) Market Studies and Demographics, (6) Environmental Studies, (7) Zoning Analysis, (8) Compliance with all governmental laws and regulations, and (9) Financing Alternatives.

## ARTICLE IV

## CLOSING

The closing shall be held at the office of Cullen R. Looney, 312 South Closner in Edinburg, Hidalgo County, Texas, on or before June 7, 2001, or at such time, date, and place as Seller and Purchaser may agree upon (which date is herein referred to as the "closing date").

At the closing Seller shall:

(1)     Deliver to Purchaser a duly executed and acknowledged Special Warranty Deed as described in Article I conveying fee simple title to all of the Property, free and clear of any and all liens, encumbrances, conditions, easements, assessments, and restrictions, except for the following:

(a)     General real estate taxes for the year of closing and subsequent years not yet due and payable, payment of which shall be assumed by Purchaser;

(b)     Any exceptions approved by Purchaser pursuant to Article III hereof; and

(c)     Any exceptions approved by Purchaser in writing.

(2)     Deliver to Purchaser a Texas Owner Title Policy at Seller's sole expense, issued by Stewart Title Insurance Company through its local agent, Cameron County Title Company, Inc. in Purchaser's favor in the full amount of the purchase price, insuring Purchaser's fee simple title to the Property subject only to those title exceptions listed in Article IV hereof, such other exceptions as may be approved by Purchaser, and the standard printed exceptions contained in the usual form of Texas Owner Title Policies. Purchaser may, at Purchaser's option and at Purchaser's sole cost and expense, obtain a partial deletion of the survey exception.

(3)     Deliver to Purchaser possession of the Property.

(4)     Deliver to Purchaser a certificate stating that Seller is not a foreign person.

At the closing Purchaser shall:

Exhibit "A"

Page -4-

CVisPDF - www.fastio.com

Case 01-40309 Document 1-4 Filed in TXSD on 06/13/2001 Page 10 of 24

(1)     Pay the cash portion of the purchase price by wire transfer to the Title Company's account, for delivery to Seller upon the closing of this transaction.

General real estate taxes for the then current year relating to the Property, shall be prorated at the Closing effective as of the date of the Closing. If the Closing should occur before the ad valorem tax rate is fixed for the then current year, the proration of current ad valorem taxes shall be made upon the basis of the tax rate for the previous year applied to the latest assessed valuation. In the event proration shall be based on ad valorem tax statements for the previous tax year, there shall be a re-proration of such tax immediately upon the receipt of the actual bill therefor, and Seller or Purchaser, as the case may be, shall pay to the other, upon demand any amount due Purchaser or Seller, as the case may be, as a result of such re-proration.

All costs and expenses of closing in consummating the sale and purchase of the Property shall be borne and paid as follows:

(1)     Owner's Title Policy to be paid by Seller;

(2)     Cost of obtaining and recording release of any liens on the property shall be paid by Seller;

(3)     All costs of any loan to finance the purchase of the Property to be paid by Purchaser;

(4)     Escrow fee to be paid one-half by Purchaser and one-half by Seller;

(5)     All filing fees not otherwise payable by Seller as set forth above to be paid by Purchaser; and

(6)     Attorney's fees to be paid by each party respectively

ARTICLE V

REAL ESTATE COMMISSIONS

It is understood and agreed that no brokers were involved in the negotiation and consummation of this Contract and no Real Estate commissions are due and payable, except as follows:

Seller has agreed to pay Wells Real Estate, Inc., the Listing Agent, 2.5 percent of the sales price and to pay Bob DuBose dba Cornerstone Properties, Buyer's Agent, 2.5 percent of the sales price. Each party represents to the other that, except as set forth above, no other brokers were involved in the negotiations and consummation of this Contract and no other real estate commissions are due and payable. Each party hereto agrees to indemnify and hold harmless the other from any other broker's commissions incurred by the indemnifying party.

Exhibit "A"

Page -5-

Case 1:01-cv-00123 Document 191 Filed in TXSD on 06/13/2001 Page 11 of 24

# ARTICLE VI

## DEPOSIT

For the purpose of binding this Contract the parties agree as follows:

(1)     Within three (3) business days after the date hereof, Purchaser shall deposit in escrow with Cameron County Title Company (the "Title Company"), the sum of FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00) (the "Initial Earnest Money"). In the event that Purchaser terminates this Contract prior to the expiration of the inspection period as herein provided, then the Initial Earnest Money shall be returned to Purchaser and the parties hereto shall be released from all obligations under this Agreement except for Purchaser's obligation for repair and indemnity under Paragraph 3.06 above. In the event the Purchaser does not terminate this Contract prior to the expiration of the inspection period, then on February 8, 2001, Cameron County Title Company shall pay the Initial Earnest Money to Seller.

(2)     In the event that Purchaser does not terminate this Contract prior to the expiration of the Inspection Period (as herein), then prior to the expiration of the Inspection Period, Purchaser shall pay to Seller the additional sum of ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($100,000.00) (the "Additional Earnest Money"). In the event that Purchaser fails to pay the Seller the Additional Earnest Money within the time provided herein, Seller may terminate this Contract by written notice to Purchaser at any time prior to the date the Additional Earnest Money is paid, in which event this Contract shall automatically terminate and the parties hereto shall have no further obligations hereunder, except as provided herein, and in the event the Purchaser has not terminated this Contract prior the expiration of the inspection period, then Seller is entitled to retain the Initial Earnest Money herein provided.

(3)     The Initial Earnest Money and the Additional Earnest Money shall not be applied to the purchase price of the property. If Purchaser does not terminate this Contract prior to the expiration of the Inspection Period, then the Initial Earnest Money and the Additional Earnest Money shall be nonrefundable to Purchaser and shall be retained by Seller whether or not Purchaser terminates this Contract for cause, unless Purchaser is willing to purchase the property "as is" and Seller refuses to close on the sale of the property as otherwise provided in this Agreement or upon a total failure of title.

(4)     Concurrently with and in consideration for the acceptance of this Contract by Seller, Purchaser has paid to Seller a non-refundable fee of ONE HUNDRED AND NO/100 DOLLARS ($100.00), and in the event this Contract is determined to be unenforceable or void as a mutually binding contract by reason of the existence of any condition, the indefiniteness of any provision, the lack of mutuality, or any approval, election or discretion of Purchaser with respect to any contingency or other matter, then such fee shall be considered adequate consideration for, and this Contract shall be construed as, an option to purchase enforceable in accordance with the terms set forth herein.



Exhibit "A"

Page -6-

CHMPDF - www.foxit.com

Downloaded in TXSD on 06/13/2001    Page 12 of 24

## ARTICLE VII

## BREACH BY SELLER

In the event that Seller should fail to consummate this Contract for any reason, except as a result of Purchaser's default, Purchaser may, as Purchaser's sole and exclusive remedy therefor, either (i) declare this Contract null and void and after the return to Purchaser of any Earnest Money Deposit to which Purchaser is entitled, neither Seller nor Purchaser shall have any further duties or obligations to the other hereunder, or (ii) enforce specific performance of this Contract.

## ARTICLE VIII

## BREACH BY PURCHASER

In the event that Purchaser should fail to consummate this transaction for any reason, except as a result of Seller's default or the termination of this Contract pursuant to the various termination provisions hereof, Seller shall, as Seller's sole and exclusive remedy, be entitled to terminate this Contract and receive the Earnest Money Deposit as liquidated damages.

## ARTICLE IX

## MISCELLANEOUS

### Assignment of Contract

9.01    Purchaser shall not have the right to assign this Contract or any of its rights hereunder except to a person affiliated with Purchaser without the prior written consent of Seller, such consent not to be unreasonably withheld or delayed.

### Notice

9.02    Any notice required or permitted to be delivered hereunder shall be deemed received when (i) actually received or (ii) ten (10) days after the date deposited in the United States mail, postage prepaid, certified mail, return receipt requested, addressed to Seller and their attorney or Purchaser and his attorney, as the case may be, at the address set forth below.

### Texas Law to Apply

9.03    This Contract shall be construed under and in accordance with the laws of the State of Texas, and all obligations of the parties created hereunder are performable in Cameron County, Texas.



Exhibit "A"

Page -/-

## Parties Bound

9.04   This Contract shall be binding upon and inure to the benefit of the parties and their respective heirs, executors, administrators, legal representatives, successors and assigns where permitted by this Contract.

## Legal Construction

9.05   In case any one or more of the provisions contained in this Contract shall for any reason be held to be invalid, illegal, or unenforceable in any respect, this invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Contract shall be construed as if the invalid, illegal, or unenforceable provision had never been contained herein.

## Prior Agreements Superseded

9.06   This Contract constitutes the sole and only agreement of the parties and supersedes any prior understandings or written or oral agreements between the parties respecting the within subject matter.

## Time of Essence

9.07   Time is of the essence in this contract.

## Gender

9.08   Words of any gender used in this Contract shall be held and construed to include any other gender, and words in the singular number shall be held to include the plural, and vice versa, unless the context requires otherwise.

## Compliance

9.09   In accordance with the requirements of Section 20 of the Texas Real Estate License Act, Purchaser is hereby advised that he should be furnished with or obtain a policy of title insurance or Purchaser should have the abstract covering the Property examined by an attorney of Purchaser's own selection.

## Notice to Purchaser of Property in Laguna Madre Water District

9.10   The real property described in this Contract, which you are about to purchase is located in the Laguna Madre Water District. The District has taxing authority separate from any other taxing authority, and may, subject to voter approval, issue an unlimited amount of bonds and levy an unlimited rate of tax in payment of such bonds. As of this date, the rate of taxes levied by the District on real property located in the District is $.243996 on each $100 of assessed valuation. The total amount of bonds which has been approved by the voters and which have been or may, at this date, be issued is $11,935,814.00, and the aggregate initial principal amounts of all bonds issued for one or

Exhibit "A"

more of the specified facilities of the District and payable in whole or in part from property taxes is $11,935,814.00. The purpose of this District is to provide water, sewer, drainage, and flood control facilities and services within the District through the issuance of bonds payable in whole or in part from property taxes. The cost of these utility facilities is not included in the purchase price of your Property, and these utility facilities are owned or to be owned by the District. The District also has the authority to adopt and impose a standby fee on property in the District that has District-financed water, sewer, sanitary, or drainage facilities and services available but not connected and which does not have a house, building, or other improvements located thereon and does not substantially utilize the utility capacity available to the Property. The District may exercise the authority without holding an election on the matter. As of this date, there is no standby fee charged. An unpaid standby fee is a personal obligation of the person that owned the Property at the time of imposition and is secured by a lien on the Property. Any person may request a certificate from the district stating the amount, if any, of unpaid standby fees on a tract of property in the District.

Disclosure to Purchaser of Property
Seaward of the Gulf Intracoastal Waterway

9.11    The real property described in this Contract is located seaward of the Gulf Intracoastal Waterway to its southernmost point and then seaward of the longitudinal line also known as 97 degrees, 12', 19" which runs southerly to the international boundary from the intersection of the centerline of the Gulf Intracoastal Waterway and the Brownsville Ship Channel. If the Property is in close proximity to a beach fronting the Gulf of Mexico, the Purchaser is hereby advised that the public has acquired a right of use or easement to or over the area of any public beach by prescription, dedication, or presumption, or has retained a right by virtue of continuous right in the public since time immemorial, as recognized in law and custom.

The extreme seaward boundary of natural vegetation that spreads continuously inland customarily marks the landward boundary of the public easement. If there is no clearly marked natural vegetation line, the landward boundary of the easement is as provided by Sections 61.016 and 61.017, Natural Resources Code.

State law prohibits any obstruction, barrier, restraint, or interference with the use of the public easement, including the placement of structures seaward of the landward boundary of the easement. STRUCTURES ERECTED SEAWARD OF THE VEGETATION LINE (OR OTHER APPLICABLE EASEMENT BOUNDARY) OR THAT BECOME SEAWARD OF THE VEGETATION LINE AS A RESULT OF NATURAL PROCESSES ARE SUBJECT TO A LAWSUIT BY THE STATE OF TEXAS TO REMOVE THE STRUCTURES.

The Purchaser is hereby notified that the Purchaser should seek the advice of an attorney or other qualified person before executing this Contract or instrument of conveyance as to the relevance of these statutes and facts to the value of the Property the Purchaser is hereby purchasing or contracting to purchase.

Exhibit "A"

Page -9-

Case 01-... Document ... in TXSD on 06/13/2001 Page 15 of ...

## Notice Regarding Coastal Area Property

9.12 IN ACCORDANCE WITH SECTION 33.135, TEXAS NATURAL RESOURCES CODE, THE FOLLOWING NOTICE IS INCLUDED AS PART OF THE CONTRACT:

(1)     The real property described in and subject to this Contract adjoins and shares a common boundary with the tidally influenced submerged lands of the state. The boundary is subject to change and can be determined accurately only by a survey on the ground made by a licensed state land surveyor in accordance with the original grant from the sovereign.  The owner of the Property described in this Contract may gain or lose portions of the tract because of changes in the boundary.

(2)     The Seller, transferor, or grantor has no knowledge of any prior fill as it relates to the Property described in and subject to this Contract.

(3)     State law prohibits the use, encumbrance, construction, or placing of any structure on, in, or over state-owned submerged lands below the applicable tide line, without proper permission.

(4)     The Purchaser or grantee is hereby advised to seek the advice of an attorney or other qualified person as to the legal nature and effect of the facts set forth in this notice on the Property described in and subject to this Contract.  Information regarding the location of the applicable tide line as to the property described in and subject to this Contract may be obtained from the surveying division of the General Land Office in Austin.

## Payment Method

9.13   All payments to be made under this Contract shall be in U.S. Dollars and shall be made by cashier's or certified check or wire transfer drawn on a Commercial Bank insured by the Federal Deposit Insurance Association and located in the United States.

## Acceptance of Deed

9.14   All exceptions contained in the Special Warranty Deed to which Purchaser does not object at or prior to closing, shall be deemed to have been agreed to by Purchaser under the terms of this Contract.

## Multiple Counterparts

9.15   This Contract may be executed in multiple counterparts, all of which shall be construed together as an original instrument to the same extent and with like effect as though all the parties hereto had executed each counterpart.  Individually signed signature pages may be attached to and assembled as one Contract and construed together as an original instrument.

Exhibit "A"

CutePDF - www.texiss.com

FILE No.728 06/12 '01 10:07 ID:KROCHEFF LEGAL

Case 1:01-cv-00032   Document 1   Filed in TXSD on 06/13/2001   Page 16 of 24

## Attorneys' Fees

9.16    If Seller or Purchaser is a prevailing party in any legal proceeding brought under or with relation to this Contract, such party shall be entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorneys' fees.

## Effective Date

9.17    The effective date of this Contract shall be deemed to be the last date that any party hereto executes a counterpart of this Contract.

Dated this _20th_ day of _November_, 2000 (to be filled in upon the execution of this Contract by all parties hereto.)

SELLER:

ESTATE OF LILLIAN A. SCHWARZ, DECEASED

Date: _11|20|00_

By: _Sury H Herl Sr_

GRADY F. HEROLD, SR., Independent Executor
P. O. Box 584
Mercedes, Texas 78570-0584

BENEFICIARIES OF THE ESTATE OF LILLIAN A. SCHWARZ, DECEASED

Date: _11|20|00_

KATHRYN LOUISE HEROLD, Beneficiary
P. O. Box 393
Mercedes, Texas 78570-0393

Date: _11/17/00_

_285 SOUTH GRAND_

DORIS JEAN SHANNON, Beneficiary
~~Greenhouse Patio~~ Apts. No. 823
2400 Old South Drive
Richmond, Texas 77469

Date: _11/16/00_

PEGGY LORRAINE BIRCH, Beneficiary
2360 Anise
El Paso, Texas 79936

Exhibit "A"

Date: 11/20/00 _____        *Ruby Lee Wells*

                                      RUBY LEE WELLS, Beneficiary
                                      912 West 9th
                                      Weslaco, Texas 78596

                                      PURCHASER:

                                      LEGENDARY, INC.

Date: _____11/13/00_____    BY: ____*Dwight* VP____

                                      Dwight C. Lorenzen, V.P.
                                      385 Highway 98 East, Suite 60
                                      Destin, Florida 32541
                                      Telephone: (850) 654-6500
                                      Facsimile: (850) 654-4027

ATTORNEY FOR PURCHASER:
Mitchell W. Legler, P.A.
300A Wharfside Way                    THIS CONTRACT SUBJECT TO ADDENDUM
Jacksonville, Florida 32207           ATTACHED.
Phone: (904) 346-3200
Fax: (904) 346-3299

ATTORNEY FOR SELLER:
Cullen R. Looney
Attorney At Law
312 South Closner ·
P. O. Box 118
Edinburg, Texas 78540-0118
Phone:  956-383-7032
Fax:  956-383-0100

Exhibit "A"
Page 12

EXHIBIT "A"

<u>TRACT I</u>:

Approximately 14.5 acres out of a 21.83 acre tract, said 21.83 acre tract being out of the Mrs. A. D. Dickinson, Jr. Tract on Padre Island, Cameron County, Texas, being a part of that certain land described in an instrument recorded in Volume 196, Page 24, Deed Records, Cameron County, Texas, said 21.83 acres being more particularly described as follows: BEGINNING AT A POINT on the North line of the Mrs. A. D. Dickinson, Jr. Tract, said point being the point of intersection of said North line with the East right-of-way line of Padre Boulevard; THENCE with the North line of the said Mrs. A. D. Dickinson, Jr. Tract, North 83 degrees 45 minutes East a distance of 1175.0 feet to a point on the ordinary high tide line of the Gulf of Mexico for the Northeast corner of this tract; THENCE with the meanders of the ordinary high tide line of the Gulf of Mexico, South 11 degrees 43 minutes 30 seconds East, 306.1 feet and South 7 degrees 26 minutes East a distance of 193.9 feet to a point for the Southeast corner of this tract, it being the intent of this call to describe 500 feet of frontage on the Gulf of Mexico in accordance with the directions of the meanders as here stated; THENCE South 83 degrees 45 minutes West parallel to and at a perpendicular distance of 498.56 feet from the North line of this tract, a distance of 1893.58 feet to the line as surveyed by J. S. Boyles for the State of Texas, for the Southwest corner of this tract; THENCE with the Boyles' survey along the Laguna Madre as above cited, North 12 degrees 07 minutes West a distance of 501.18 feet to its point of intersection with the North line of the Mrs. A. D. Dickinson, Jr. Tract for the Northwest corner of this tract; THENCE with the North line of the Mrs. A. D. Dickinson. Jr. Tract, North 83 degrees 45 minutes East a distance 736.6 feet to the PLACE OF BEGINNING, containing 21.83 acres, more or less, said 21.83 acre tract being more specifically described as Tract I in Deed from JETTIE VIEW DEVELOPMENT COMPANY, INC., a Texas corporation, to D. J. SCHWARZ dated March 31, 1975, said approximately 14.5 acres being the 21.83 acres less the acreage conveyed previously by D. J. SCHWARZ to the STATE OF TEXAS for roadway purposes.

SAVE AND EXCEPT 32,591.2 square feet; being 32,591.2 square feet out of a 21.83 acre tract (said 21.83 acres being described as Tract I in Deed from Jettie View Development Company, Inc. to D. J. Schwarz dated March 31, 1965 and recorded in Cameron County Deed Records, Volume 780, Page 507) out of the Mrs. A. D. Dickinson, Jr. Tract in South Padre Island, Cameron County, Texas, and said 32,591.2 square foot tract being more particularly located and described as follows: COMMENCING at a concrete monument at the intersection of the East right-of-way line of Padre Boulevard and the North line of said Dickinson's 133-1/3 acre tract, for the Northwest corner and PLACE OF BEGINNING of this tract; THENCE along the North line of said 21.83 acre tract and Mrs. Dickinson's 133-1/3 acre tract, North 83 degrees 45 minutes, East 175.0 feet to a ¼ inch iron pin inside of a 3/4 inch steel pipe, for the Northeast corner of this tract; THENCE South 06 degrees, 15 minutes East 175.0 feet to a ½ inch iron pin inside of a 3/4 inch steel pipe for the Southeast corner of this tract; THENCE parallel to the North line of said 21.83 acre tract, South 83 degrees 45 minutes West, 201.0 feet to a ½ inch iron pin inside a 3/4 inch steel pipe on the East right-of-way line of said Padre Boulevard, for the Southwest corner of this tract; THENCE along the East right-of-way line of said Padre Boulevard along a curve to

CutePDF - www.tesisa.com

the left having a radius of 1482.4 feet, a partial arc distance of 177.04 feet to the PLACE OF BEGINNING containing 32,591.2 square feet, more or less, not inclusive of any road right-of-way.

TRACT II:

Approximately 9.95 acres out of a 11.87 acre tract, said 11.87 acres out of the Mrs. A. D. Dickinson, Jr. Tract on Padre Island, Cameron County, Texas, being a part of that land described as follows: BEGINNING at the intersection of the North line of the Mrs. A. D. Dickinson, Jr. Tract and the line as surveyed by J. S. Boyles for the State of Texas, for the Northeast corner of this tract; THENCE, with the Boyles' line as above cited, South 12 degrees 07 minutes East a distance of 501.18 feet to a point for the Southeast corner of this tract; THENCE, South 83 degrees 45 minutes West parallel to and at a perpendicular distance of 498.56 feet from the North line of this tract, a distance of 1016.18 feet to a point on the West line of the Mrs. A. D. Dickinson, Jr. Tract for the Southwest corner of this tract; THENCE, with the West line of said tract, North 16 degrees 44 minutes West a distance of 507.02 feet to the Northwest corner of the Mrs. A. D. Dickinson, Jr. Tract for the Northwest corner of this tract; THENCE, with the North line of the Mrs. A. D. Dickinson, Jr. Tract North 83 degrees 45 minutes East a distance of 1057.2 feet to the place of beginning, containing 11.87 acres, more or less, said approximately 9.95 acres being the 11.87 acres less the acreage conveyed previously by D. J. Schwarz to the State of Texas for roadway purposes.

AS TO ALL TRACTS, SAVE AND EXCEPT all prior reservations of oil, gas, and other minerals, and SAVE AND EXCEPT all oil, gas, or other minerals owned by Seller, if any.

AS TO ALL TRACTS SUBJECT TO: Easements of record and visible easements; restrictions and limitations of record; any changes caused by erosion, accretion or reliction; zoning ordinances and restrictive laws applicable to the property, if any; oil and gas leases of record.

# ADDENDUM TO REAL ESTATE CONTRACT

THIS ADDENDUM is dated this 5th day of January, 2001, and is attached to and made a part of that Real Estate Contract between the **Estate of Lillian Schwarz by Grady F. Herold, Sr., Independent Executor** ("**Seller**"), joined by **Kathryn Louise Herold, Doris Jean Shannon, Peggy Lorraine Birch**, and **Ruby Lee Wells** (collectively, the "**Beneficiaries**"), and **Legendary, Inc.** (the "**Purchaser**"), which Contract is dated November 20, 2000 (the "**Contract**").

The following facts constitute the background for this Addendum:

A.       The Purchaser has identified a material portion of the property which is the subject of the Contract (the "**Property**") which is likely to fall within the jurisdictional limits of applicable "wetlands" regulations.  Due to the locations of the possible wetlands, there is substantial  work in the form of professional investigations, studies and planning (the "**Analysis**") to be done before anyone can determine the extent to which the Property can be developed and the highest and best development for the Property.  That analysis is required, as practical matter, before a lender will accept the Property as collateral for an acquisition loan and before the Property can be sold.

B.       A proper Analysis of the Property will take a substantial commitment of time and funds.   It appears that, in addition to other requirements, the following (the "**Permits**") will be required for any material development of the Property: (i) permits for alterations of wetlands and appropriate mitigation;(ii) a dredge and fill permit relating to wetlands; and (iii) a dunes and beach permit relating to construction of a sea wall and relocation of dunes.

C.       Purchaser's will have to engage surveyors, architects, engineers, attorneys and environmental specialists ("**Professionals**") to perform the Analysis at an estimated cost of $50,000.00.  Moreover, the coordination of the Professionals and the proper land planning and spearheading of the efforts to obtain the necessary Permits will require additional expenditures of approximately $100,000.00 of developer efforts, costs and time to achieve a meaningful Analysis and demonstrate the value of the Property (see Expense Budget attached).

D.       Purchaser is willing to advance the costs to obtain the Analysis and commit the corporate resources so long as Purchaser has adequate time to complete the work and be assured that the Permits can be obtained.  The Analysis and Permits will inure to the benefit of the Seller either through a closing of the purchase under the Contract or by the Sellers having the benefit of the Analysis,  planning and Permits to enable Seller to obtain the highest and best price for the Property from a third party.

Now therefor, for and in consideration of ten dollars ($10.00) and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Seller

Exhibit "A"

and the Beneficiaries, the parties hereto agree that the Contract is hereby modified as set forth below:

1. <u>Inspections</u>.

  The "Inspection Period", as that term is used in Section 3.05 of the Contract, is hereby modified to extend the Inspection Period until the earlier Purchaser is able, acting diligently, to complete the Analysis and obtain the Permits.

2. <u>Earnest Money Deposit</u>.

  (a) On or before January 15, 2001, Purchaser will deliver to Seller $50,000 (the "Initial Earnest Money"). Purchaser agrees to diligently pursue such investigation as is commercially reasonable to obtain the Analysis and to determine whether the Permits can be obtained. Seller agrees that the Initial Earnest Money may be utilized to pay fees of outside Professionals in connection with the Analysis and obtaining the Permits during the Inspection Period; provided, however, that in the event Purchaser's acquisition of the Property pursuant to the Contract as modified by this Addendum does not close, the Purchaser agrees to deliver to Seller all work of the Professionals including, without limitation, studies and evaluations and other materials developed by such Professionals in their Analysis and investigation of the Property as are in Purchaser's possession and control. Promptly upon receipt of an invoice from a Professional with respect to investigation of the Property, Purchaser shall submit such invoice to Seller and Seller shall pay such invoices from the Initial Earnest Money, but shall have no obligation to pay such invoices to the extent any such invoices exceed, in the aggregate, the Initial Earnest Money.

3. <u>Closing</u>. The Closing, as provided in Article IV of the Contract is hereby modified so that the closing must occur on or before the expiration of 90 days following the end of the Inspection Period. Seller agrees to cooperate with Purchaser in Purchaser's efforts to obtain the Permits in a timely fashion including, without limitation, the joining in applications for Permits, provided, however, that in no event shall Seller incur any costs in connection therewith other than costs being paid from the Initial Earnest Money.

4. <u>Ratification</u>. Except as expressly modified hereby, the Contract is hereby ratified and confirmed.

      **ESTATE OF LILLIAN A. SCHWARZ, DECEASED**

      By:_____

        GRADY F. HEROLD, SR.,
        Independent Executor

Page 2 of 3

Exhibit "A"

CUtPDF · www.fineprint.com

**BENEFICIARIES OF THE ESTATE OF LILLIAN A. SCHWARZ, DECEASED**

_____
**KATHRYN LOUISE HEROLD**, Beneficiary

_____
**DORIS JEAN SHANNON**, Beneficiary

_____
**PEGGY LORRAINE BIRCH**, Beneficiary

_____
**RUBY LEE WELLS**, Beneficiary

PURCHASER:

**LEGENDARY, INC.**

By: _____
Peter H. Bos, President

W:\MISC\SnPadre Addendum.wpd
MWL/am

Exhibit "A"

FILE NO.120 06/12 '01 10:00 ID:RI...   Filed in TXSD on 06/13/2001   Page 23 of 24   ...FAX 0040400200   PAGE 10

## South Padre Island - Schwarz Tract
## EXPENSE BUDGET

| | Category | Date Cost Incurred | Cost | Contract | Estimate | Overhead |
|---|---|---|---|---|---|---|
| 1. | Survey (Mejia & Rose) | 2/15/01 | $7,700 | | | |
| | | | **Sub Total** | $ 7,700 | | |
| 2. | Site Plan/Arch. (Labunski & Assoc.) | 2/15/01 | $6,000 | | | |
| | | 3/15/01 | $6,000 | | | |
| | | | **Sub Total** | $12,000 | | |
| 3. | Environmental (SWCA) | 2/15/01 | $8,000 | | | |
| | | 4/15/01 | $6,000 | | | |
| | | 6/15/01 | $6,000 | | | |
| | | 9/15/01 | $3,000 | | | |
| | | 11/15/01 | $3,000 | | | |
| | | | **Sub Total** | $26,000 | | |
| 4. | Legal | 1/15/01 | $5,000 | | | |
| | | 1/15/02 | $5,000 | | | |
| | | | **Sub Total** | | $10,000 | |
| 5. | Travel and Room Expense | | | | | |
| | Peter Box | 1/10/01 | $ 750 | | | |
| | Dwight Lorenzen | 1/10/01 | $ 750 | | | |
| | Jay Self | 1/10/01 | $ 750 | | | |
| | Dwight Lorenzen | 2/10/01 | $ 750 | | | |
| | Dwight Lorenzen | 3/10/01 | $ 750 | | | |
| | Dwight Lorenzen | 5/10/01 | $ 750 | | | |
| | Dwight Lorenzen | 7/10/01 | $ 750 | | | |
| | Dwight Lorenzen | 9/10/01 | $ 750 | | | |
| | Dwight Lorenzen | 11/10/01 | $ 750 | | | |
| | Dwight Lorenzen | 1/10/01 | $ 750 | | | |
| | | | **Sub Total** | | $ 7,500 | |

Exhibit "A"

# South Padre Island - Schwarz Tract
## EXPENSE BUDGET

| | Category | Date Cost Incurred | Cost | Contract | Estimate | Overhead |
|---|---|---|---|---|---|---|
| 6. | Administrative and Clerical | | | | | |
| | Reneé (15% of time) | | $2,080 | | | |
| | Wendy (10% of time) | | $4,500 | | | |
| | Payroll & Benefit Burden (27%) | | $1,776 | | | |
| | | | **Sub Total** | | | $ 8,356 |
| 7. | Executive Allocation of Expense | | | | | |
| | Peter Box | | $35,000 | | | |
| | Dwight Lorenzen | | $25,000 | | | |
| | Jay Self | | $25,000 | | | |
| | | | **Sub Total** | — — | — — | $ 85,000 |
| | | **SUB TOTALS** | | $ 45,700 | $ 17,500 | $ 93,357 |
| | | **GRAND TOTAL** | $156,556 | | | |

E:\SO PADRE ISLAND\Expense Budget.wpd

Exhibit "A"