United States District Court
Southern District of Texas
FILED

JUL 3 0 2001

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
|     Plaintiff | § | |
| v. | § | CIVIL NO. B-01-053 |
| GRADY F. HEROLD, SR., et al., | § | |
|     Defendants | § | |

### Joint Discovery and Case Management Plan

By and through their respective attorneys of record, the United States of America ("United States"), Grady F. Herold, Sr., Kathryn Louise Herold, Peggy L. Horn, Ruby L. Wells and Doris Jean Shannon ( "the Estate"), Cameron County, Texas, Laguna Madre Water District, Cameron County Emergency Services District, Southmost Union College District, Point Isabel Independent School District, Town of South Padre Island, and South Texas Independent School District ("the Local Property Tax Authorities"), the State of Texas ( "the State"), and Legendary Inc., ("Legendary") submit the following Joint Discovery and Case Management Plan.

1. State where and when the meeting of the parties required by Rule 26(f) was held and identify the counsel who attended for each party.

    The meeting was held by telephone conference on July 25, 2001, at 2 p.m. with counsel for all parties participating.

2. List the cases related to this one that are pending in any state or federal court with the case number and court.

    State of Texas, County of Cameron, et al., v. Grady F. Herold, Sr., et al.; <u>Cause No. 1999-10-4135-D 103rd Judicial District Court, Cameron County Texas.</u>

3. Specify the allegation of federal jurisdiction.

    This court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. §§ 7403 and 7404.

4. Name the parties who disagree and the reasons.

>The parties agree that the Court has jurisdiction to hear the United States' Complaint, as well as the State's and Local Property Tax Authorities' Counterclaims/Crossclaims.
>
>The United States contends that the Court may not have jurisdiction to hear the defenses raised in paragraphs 27 and 28 of the Estate's Answer challenging the amount of the underlying federal estate tax that was originally assessed 15 years ago. The United States anticipates that it may file a motion on these issues.
>
>The Estate contends that the Court has jurisdiction to determine the amount of the underlying tax liability. The leading case in this area is *United States v. O'Connor*, 291 F.2d 520, 526-528 (2d Cir. 1961) in which the court, at the Government's urging, overruled its prior position that a taxpayer could not challenge the amount of an assessment in a lien foreclosure action. The Second Circuit analyzed the then existing precedent on the issue and the legislative history of Internal Revenue Code Sec. 7403 and determined that a taxpayer (although perhaps not a third party) was entitled to raise the issue of the underlying liability in defense to a suit to foreclose a tax lien. In subsequent opinions, courts (and Government counsel) have acknowledged this rule in lien foreclosure cases. See, e.g., *United States v. Camejo*, 666 F. Supp. 1542, 1544-1545 (S.D. Fla. 1987) ("The Government argues that only the taxpayer can attack the validity of the assessments at issue. ...When the Government seeks the aid of the Courts in enforcing an assessment, it opens the assessment to judicial scrutiny in all respects. [citing *O'Connor*]"); and *United States v. Borchardt*, 470 F. 2d 257, 260 (7th Cir. 1972) (at oral argument the Government conceded the error of the trial court in rejecting an attack on the amount of the tax liability). Nor is this a case in which *res judicata* precludes the raising of this issue. No prior judicial determination of the tax has taken place; indeed, no opportunity for one has ever before been available to the Estate because of the erroneous overvaluation of the subject property on the originally filed estate tax return.

5. List anticipated additional parties that should be included, when they can be added, and by whom they are wanted.

>At the present time, the parties do not anticipate that any additional parties will necessary with respect to the current actions seeking foreclosure of liens against the Estate's two tracts of land on South Padre Island. However, other persons would have to be added if it is learned that they have an interest in that property. To that end, the United States is currently investigating whether two real estate agents who worked on the putative real estate contract, dated November 20, 2000, would have an interest in the property and would need to be added as parties.
>
>The United States may amend its Complaint to seek foreclosure of its liens on several other tracts of property owned by the Estate in Cameron, Hildago and Chambers Counties. In such event, it would be necessary to add a few additional

local taxing authorities to the suit. The United States anticipates being able to determine whether it will amend its Complaint by October 1, 2001.

6. List anticipated interventions.

None at this time.

7. Describe class-action issues.

There are no class action issues.

8. State whether each party represents that it has made the initial disclosures required by Rule 26(a). If not, describe the arrangements that have been made to complete the disclosures.

The parties anticipate making their initial disclosures by August 8, 2001.

9. Describe the proposed agreed discovery plan, including:

A. Responses to all the matters in Rule 26(f).

1. 26(f)(1) - changes to timing, form, or requirement for disclosures under Rule 26(a):

No changes requested.

2. 26(f)(2) - the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused upon particular issues:

The parties may conduct discovery on any subject which is within the limits imposed by the Federal Rules of Civil Procedure.

The parties appear to be in agreement as to the priority of the respective lien positions against the property, and do not anticipate that much, if any discovery will be needed on that topic. However, the Estate has asserted defenses in paragraphs 26 through 29 of its Answer that may require discovery by the United States. The amount of discovery that may be needed on those defenses depends largely on how the Court rules on a dispositive motion that will be filed by the United States seeking to eliminate those defenses on jurisdictional and other grounds.

The parties agree to complete discovery by January 25, 2002.

Discovery need not be conducted in phases, limited, or focused to

      particular issues, provided that it is within the limits imposed by the Federal Rules of Civil Procedure.

B. When and to whom the plaintiff anticipates it may send interrogatories.

    The United States anticipates that it may send interrogatories to the Estate, and Legendary by September 28, 2001.

C. When and to whom the defendants anticipate they may send interrogatories.

    Defendants anticipate that they may send interrogatories by October 15, 2001.

D. Of whom and by when the plaintiff anticipates taking oral depositions.

    The United States anticipates that it may depose several persons, including but not limited to the following witnesses:
      Grady F. Herold.
      One or more of the Heirs.
      Billy Joe Day, accountant for the Estate.
      Grant Thornton, preparers of the original estate tax return.
      Legendary, Inc.
      Any real estate agents or brokers retained by the Estate.
      Any persons who appraised the property and any appraisers hired by the Estate or the United States.
      Any surveyors, engineers or other consultants hired by the Estate concerning the property.
      Any persons from whom the Estate received offers or inquiries to purchase any property owned or held by the Estate.
      Any experts designated by any party.

E. Of whom and by when the defendants anticipate taking oral depositions.

    At the present time, the Estate anticipates that it may depose Pat Lee of the IRS and one or more Revenue Officers of the IRS. At the present time, the other defendants do not anticipate the need for depositions.

F. When the plaintiff (or party with the burden of proof on an issue) will be able to designate experts and provide reports required by Rule 26(a)(2)(B) and when the opposing party will be able to designate responsive experts and provide their reports.

    1. Presently, the United States, the State, and Local Property Tax Authorities (collectively, "the Lien Creditors") do not believe that the presentation of their actions for foreclosure of liens and deeds of trust should require any expert witnesses. In this regard, the

Page 4 of 10

>  Lien Creditors do not believe that the testimony of one of their clients' employees concerning the balance of their respective claims against the property constitutes expert testimony. However, to the extent that any other party disagrees, the Lien Creditors reserve the right to designate one or more of their clients' employees as experts and provide a report with 30 days of being notified that such testimony would be considered expert testimony.

2. The Estate has alleged defenses in paragraphs 27 and 28 of its Answer which contest the amount of the underlying federal estate tax that was originally assessed 15 years ago. The United States does not believe that the Court has jurisdiction to entertain those defenses, and will attempt to dispose of those defenses by dispositive motion. However, if the Court disagrees, and the defenses are to be tried, then both the United States and the Estate may need to designate expert witnesses related to those defenses. Accordingly, the United States believes that the parties should not be required to designate expert witnesses on those matters until after the Court's ruling on its dispositive motion.

G. List expert depositions the plaintiff (or the party with the burden of proof on an issue) anticipates taking and the anticipated completion date. *See* Rule 26(a)(2)(B) (expert report).

> The United States will take the deposition of any experts designated by any other party, and of any person who has appraised the property. The United States will complete those depositions by January 25, 2002.

H. List expert depositions the opposing party anticipates taking and their anticipated completion date. *See* Rule 26(a)(2)(B) (expert report).

> The defendants may depose any experts designated by the United States or any other party, and will complete those depositions by January 25, 2002.

10. If the parties are not agreed on a part of the discovery plan, describe the separate views and proposals of each party.

> None at this time.

11. Specify the discovery beyond initial disclosures that has been undertaken to date.

> None.

Page 5 of 10

12. State the date the planned discovery can reasonably be completed.

>The parties agree that all discovery can be completed by January 25, 2002.

>The United States believes that if it is correct on the Court's lack of jurisdiction to hear the defenses raised in paragraphs 27 and 28 of the Estate's Answer, discovery may be minimal, and could be completed in a much shorter time.

>The Estate believes that irrespective of any rulings by the Court on motions, discovery is unlikely to be completed in a much shorter time than January 25, 2002.

13. Describe the possibilities for a prompt settlement or resolution of the case that were discussed in your Rule 26(f) meeting.

>During the week of July 16th, various scenarios concerning a possible sale of the property to Legendary were discussed by most of the parties. Such a sale would not close for 11 to 14 months because the permitting process necessary to develop the property cannot be completed before that time. The United States and the Estate also discussed their respective claims and defenses.

14. Describe what each party has done or agreed to do to bring about a prompt resolution.

>As indicated in paragraph 13 above, initial discussions on various ways to resolve this matter have been held.

>The United States has exchanged information with the Estate concerning the amount of its federal estate tax claim against the property. Additionally, upon learning that there were no "For Sale" signs on the property, and that a large number of potential developers and buyers would be traveling to South Padre Island between July 20th and August 3rd, for an auction of other undeveloped land on the Island, the United States offered to pay for the creation and placement of For Sale signs on the property provided that a phone number for its attorneys was also listed somewhere on the signs along with the phone number for a representative of the Estate's choosing.

>There have been substantial discussions between the Estate and Legendary about the sale of the property to Legendary. Legendary believes that the placement of such signs would adversely affect these negotiations.

15. From the attorneys' discussion with the client, state the alternative dispute resolution techniques that are reasonably suitable and state when such a technique may be effectively used in this case.

>The parties do not believe that alternative dispute resolution techniques would be suitable for this case.

16. Magistrate judges may now hear jury and non-jury trials. Indicate the parties' joint position on a trial before a magistrate judge.

    The parties do not consent to trial before a magistrate judge.

17. State whether a jury demand has been made and if was made was it made on time.

    A timely jury demand was made by the Estate.

    The United States contends that the Estate is not entitled to a jury on the United States' claims, because the United States is merely seeking to foreclose its liens and deeds of trust.

    The Estate contends that it is entitled to a jury trial on the issue of the amount of the underlying tax liability. The Fifth Circuit, sitting *en banc*, put this issue to rest over 20 years ago. In *United States v. McMahan*, 569 F.2d 889 (1978) the court reversed a judgment in favor of the Government in a lien foreclosure suit because the trial court denied the taxpayer's request for a jury trial on the issue of his liability for the underlying tax assessment.

    The United States believes that the Estate's reliance on *McMahan* is not correct because in that case, the United States sought a personal judgment against Mr. McMahan for taxes owed under 26 U.S.C. § 6672, in addition to seeking a lien foreclosure under 26 U.S.C. § 7403. In contrast, the United States' Complaint in this case presently does not seek a judgment against any defendant for personal liability, and no right to a jury exists. *See Duncan v. First National Bank of Cartersville*, 597 F. 2d 51, 55-56 (5th Cir. 1979). Accordingly, the United States will be filing a motion to strike the Estate's jury demand with respect to its claims.

18. Specify the number of hours it will take to present the evidence in this case.

    Between 8 and 24 hours may be needed to present the evidence in this case, depending on which defenses raised by the Estate survive dispositive motions.

19. List pending motions that could be ruled on at the initial pretrial and scheduling conference.

    An Unopposed Motion to Substitute Attorney for Local Taxing Authorities at Scheduling Conference, and to Appear Pro Hac Vice.

20. List other pending motions.

    None at this time.

21. Indicate other matters peculiar to this case, including discovery, that deserve the special attention of the court at the conference.

   A. <u>Suggestion of All Tax Lien Creditors for two phases:</u>

   After 15 years of waiting for the Estate to sell sufficient property to satisfy its federal estate tax debts, the United States filed this action to foreclose tax liens and deeds of trust against the Estate's property located on South Padre Island. Local Property Tax Authorities and the State were also sued because of their lien claims on the property, and have also made claims to enforce those liens in this case. It appears from the parties' pleadings and discussions that property must be sold to satisfy the claims against it. The United States, the Local Property Tax Authorities, and the State (collectively the "Tax Lien Creditors") agree that the Local Property Tax Authorities have first priority, that the United States' liens and deeds of trust have second priority, and that the State's liens have third priority. It further appears that all other parties merely have unsecured claims against the property of lower priority, if any. The only dispute appears to be exactly how much is owed by the Estate to each lien claimant. As such, the Tax Lien Creditors believe that upon the filing of an appropriate motion by one or more of the lien creditors, an order should be entered permitting the property to be foreclosed, and the property sold, whether by private judicial sale or public auction. The proceeds of the sale could then be deposited into the registry of the Court and earn interest while the amount of the various claims against the property are determined by the Court on subsequent motions or trial if necessary. Moreover, knowledge of the exact amount of money recoverable from the property will assist the parties in resolving the amount of their claims against the property.

   B. The United States believes that it will suffer ongoing and increased harm unless the property is sold and the Local Property Tax Authorities are paid off in a prompt fashion. Based on recent information provided by the Estate and its attorneys, the United States believes that there may no longer be sufficient assets remaining in the Estate to pay all of its federal tax liens, and thus, the United States is already at risk of losing some of its secured claim. That risk is compounded every day the Local Property Tax Authorities remain unpaid because their claims earn approximately 12% interest and erode the lien positions of the United States and the State. Furthermore, approximately $70,000 in new 2001 property taxes will soon be due, and will further erode the lien positions of the United States and the State.

   C. The Estate objects to any attempt at a precipitate sale of the subject property. The Estate has been diligent over the past 15 years in trying to sell property in order to pay its tax debts, but has been unable to do so because of an unfortunate and erroneous overvaluation of the subject property on the originally filed estate tax return. During that 15 year period no property has been

distributed to any of the beneficiaries of the estate with all available cash being used to pay taxes and other expenses of administration. If this property is sold at a fire sale, the heirs of the decedent will not receive a penny of their inheritance with all available assets going to satisfy the IRS. Such a scenario is heart rending and unnecessary. Legendary is eager to purchase the property for development at a price that would satisfy all tax debts and leave a small sum for distribution to the heirs. Legendary asks only for 11 to 14 months in which to acquire the permits necessary to approve the intended use of the land, most of which time will be required for consideration of the project by the federal government in the form of the Corps of Engineers. In the absence of such permits the property is worth only a fraction of the proposed purchase price.

22. List the names, bar numbers, addresses and telephone numbers of all counsel.

*Kent Rider with permission by Andrew Sobotka*
Kent M. Rider
State Bar No. 16896000
Southern Dist. No. 13883
Linebarger, Heard, Goggan, Blair, Graham,
Pena & Sampson
P.O. Box 17428
Austin, Texas 78760
(512) 447-6675
(512) 443-3494 (fax)
    Attorney Cameron County, Texas,
Laguna Madre Water District, Cameron
County Emergency Services District,
Southmost Union Union College District,
Point Isabel Independent School District,
Town of South Padre Island, and South
Texas Independent School District.

*Andrew Sobotka*
Andrew L. Sobotka
Texas Bar No. 18819900
Manuel P. Lena Jr.
Texas Bar No. 12201255
Attorneys, Tax Division
U. S. Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201
(214) 880-9736 / (214) 880-9750
(214) 880-9741 (fax)
    Attorneys for United States

*Larry Sherlock with permission by Andrew Sobotka*
Linda Paine
State Bar No. 15414000
Southern Dist. No. 6379
Larry Sherlock
State Bar No. 18240720
Southern Dist. No. 7454
Chamberlain, Hrdlicka, White,
Williams & Martin
1200 Smith Street, Suite 1400
Houston, TX 77002-4401
(713) 658-1818
(713) 658-2553 (fax)
    Attorneys for Grady F. Herold, Sr.,
Kathryn Louise Herold, Peggy L. Horn,
Ruby L. Wells and Doris Jean Shannon

*David Garza with permission by Andrew Sobotka*
David C. Garza
State Bar No. 07731400
Southern Dist. No. 3778
Garza & Garza, LLP
P.O. Box 2025
680 East St. Charles, Suite 300
Brownsville, TX 78522
(956) 541-4914
(956) 542-7403 (fax)
    Attorney for Legendary, Inc.

*David Randell with permission by Andrew Sobotka*
David Randell
State Bar No. 16532400
Southern Dist. No. 1638
Asst. Attorney General
Bankruptcy & Collections Div.
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2173
(512) 482-8341(fax)
    Attorney for State of Texas