

56

IN THE UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

FEB 2 0 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff | § | |
| v. | § | CIVIL NO. B-01-053 |
| GRADY F. HEROLD, SR., et al., | § | |
| Defendants | § | |

### United States' Response in Opposition to Motion by Grady Herold, Sr., Et. Al., To Amend Scheduling Order and Extending Discovery Deadlines

The United States, on behalf of its agency, the Internal Revenue Service, opposes the Motion by Grady Herold, Sr., Et. Al., To Amend Scheduling Order and Extending Discovery Deadlines (the Estate's Motion) because the Estate has already had more than sufficient time to sell its property, the contract on which the requested extension is based is already in default, and the past failure of the Estate and Legendary to close an almost identical deal makes it unlikely that this new contract would result in anything more than further delays.

1. Initially, it is important to note that the relief sought in the Estate's Motion is far different from the agreed upon short extensions requested in the pending United States' Unopposed Motion for Leave to Amend Complaint, and For Extension of Certain Deadlines. The Estate's Motion seeks to extend all deadlines, including the trial, for a period of one year on the basis of the Estate and Legendary having entered into a contract for the sale of the Estate's property on South Padre Island (the Property) at issue in this tax lien foreclosure suit.

2. The tax liens at issue in this case arise out of federal estate taxes voluntarily reported due by the Estate in 1986. Later, during 1988, these taxes were reduced by agreement between the IRS and the Estate wherein the Estate expressly consented to the assessment and

collection of the lower amount of taxes.[1] In sum, the Estate has had almost 16 years to pay its tax debts, but has continually failed to do so.

3. Rather than sell its vast real estate holdings and pay its agreed upon federal estate tax debts, the Estate requested a series of one year extensions of time to pay the estate tax from the IRS contending that it was having difficulty selling its real estate, or would otherwise be forced to incur losses on the sale of its real estate. The IRS agreed to the first nine requests for a one year extension, but in July of 1995, denied the Estate's tenth request for another one year extension.

4. Thereafter, the IRS began administrative collection efforts against the Estate, and seized nine of the Estate's properties. However, at the request of the Estate, the IRS released the seized properties because the Estate indicated it could sell the Property at issue in this case to a water park developer. The Estate gave the IRS deeds of trust and an installment agreement requiring quarterly payments until November of 1997. During this time the Estate sold some of its properties and made some payments to the IRS. However, when the Estate was not able to close a deal with the water park developer, it requested more time to pay from the IRS. In October of 1997, the IRS agreed to extend the time for the Estate to fully pay its debt to February 24, 1998, provided that the Estate make two small installment payments, and one balloon payment for the balance on or before February 24, 1998.

---

[1] Lillian Schwarz died on August 24, 1985. Her estate filed a Form 706 Estate Tax return on May 29, 1986, and the IRS accepted the return as filed. On July 7, 1986, the IRS assessed $5,684,832 in estate taxes shown due on the return. In 1988, the Estate filed a supplemental estate tax return seeking to reduce the gross estate to $10,374,869. In large part, the IRS agreed with the supplemental return and reduced the estate tax to $3,408,321. On August 8, 1988, Grady Herold, Sr., as Executor of the Estate signed a Form 890 which specifically consented to the, "immediate assessment and collection ... and acceptance of any over-assessment (decrease in tax and penalties)" shown on that form.

5. Despite holding the Property at issue in this case, as well as numerous other pieces of real estate in South Texas, the Estate has not made any payments on its estate tax debt since November 20, 1997 - over four years ago. Around the same time, the Estate stopped paying the annual ad valorem property tax debts on the Property, and as a result, the United States' tax lien position in the Property has been eroded by over $600,000 in property taxes. As noted in the Response to the Estate's Motion filed by the Property Tax authorities, that erosion of the United States' lien position will continue to grow due to continued interest and penalty accruals on those property taxes.

6. Not only has the Estate had ample time to sell its Property on its own terms, but there is no reason to rely on the Estate's "new" contract with Legendary as a basis for a continuance. Legendary was made a party to this suit because on November 20, 2000, it entered into a contact with the Estate for the sale for the Property (the Previous Contract). The Previous Contract contained a closing date of June 2001. However, the same day that Previous Contract was signed, Legendary immediately began efforts to amend it and to extend the closing date to the first week in February 2002. Although the Estate never agreed to amend the Previous Contract, it also failed to seek enforcement of that contract when closing did not occur by June 2001.

7. In October 2001, upon learning that the Estate and Legendary were again negotiating another contact, the undersigned attorney for the United States informed the Estate's attorneys that the United States would require, among other things, as a condition of further forbearance, a reasonable deposit and a closing date no later than December 31, 2002, on any contract for the sale of the Property.

8. On November 16, 2001, despite knowing that the terms would not be acceptable

to the United States, the Estate accepted a new contract with Legendary for the sale of the Property and to purchase the ad valorem tax liens against that Property (the New Contract). That New Contract gives Legendary a <u>new</u> 18 months to inspect the Property and at least 19 months before closing some time in May 2003. Legendary can further delay closing because the bridge to the Island was closed for several months. Legendary is not required close unless a forbearance agreement is reached with the IRS.[2] It is this New Contact that the Estate relies on in asking for a one year extension of the all deadlines and the trial.

9. The New Contract should not be relied upon as the basis for a continuance. The Estate and Legendary have already failed to meet at least two deadlines in the New Contract. First, despite the New Contract requiring the Estate and Legendary to "Promptly" begin negotiations with the IRS for a forbearance agreement, neither the Estate nor Legendary have made any meaningful attempt to negotiate such an agreement during the three months since the New Contract was signed. Second, despite having only "45 days" from the New Contract's signing to do so, Legendary has still not purchased the ad valorem tax liens.

10. The Estate and Legendary have had almost two years to make this deal happen, and yet they have never taken any steps to move either contact past the initial signatures. Given Legendary's failure to close the Previous Contract; Legendary's defaults on the New Contract; and the Estate's chronic failures to comply with the numerous agreements and extensions given to it by the IRS in the past, there is no reason to believe that Legendary and the Estate would ever close this New Contract. As such, the most likely result is only delay in collecting what is already a 16 year old tax debt.

---

[2] One might argue that the practical effect of granting the Estate's Motion would be to impose the same kind of forbearance agreement on the United States that the Estate has not attempted to negotiate as required under the terms of the New Contract.

11. In sum, the Estate's request for more time is "too little" and "too late," and should be denied.

*[signature]*

**Andrew L. Sobotka**
Texas Bar No. 18819900
Attorney, Tax Division
U. S. Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201
214/880-9736
Attorney for United States (IRS)

## Certificate of Service

IT IS HEREBY CERTIFIED that service of the foregoing document has been made on February 20, 2002, by mailing a copy thereof to:

Larry Sherlock
Chamberlain Hrdlicka
1200 Smith Street, Suite 1400
Houston, TX 77002-4401

David C. Garza
Garza & Garza, LLP
P.O. Box 2025
680 East St. Charles, Suite 300
Brownsville, TX 78522

Kent M. Rider
Linebarger Heard
P.O. Box 17428
Austin, Texas 78760

David Randell
Asst. Attorney General
Bankruptcy & Collections Div.
P.O. Box 12548
Austin, Texas 78711-2548

_____
Andrew L. Sobotka

# IN THE UNITED STATES DISTRICT COURT FOR THE

# SOUTHERN DISTRICT OF TEXAS

# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff | § | |
| v. | § | CIVIL NO. B-01-053 |
| GRADY F. HEROLD, SR., et al., | § | |
|     Defendants | § | |

## Order Denying Motion by Grady Herold, Sr., Et. Al., To Amend Scheduling Order and Extending Discovery Deadlines

The Court, having considered the Motion of Grady Herold, Sr., et al., to Amend Scheduling Order and Extending Discovery Deadlines, and any Response filed thereto, finds and is of the opinion that the motion should be denied. Accordingly, it is hereby ordered that the motion is denied.


Signed _____, 2002


_____
UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT FOR THE

# SOUTHERN DISTRICT OF TEXAS

# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff | § | |
| v. | § | CIVIL NO. B-01-053 |
| GRADY F. HEROLD, SR., et al., | § | |
|     Defendants | § | |

## Order Denying Motion by Grady Herold, Sr., Et. Al., To Amend Scheduling Order and Extending Discovery Deadlines

The Court, having considered the Motion of Grady Herold, Sr., et al., to Amend Scheduling Order and Extending Discovery Deadlines, and any Response filed thereto, finds and is of the opinion that the motion should be denied. Accordingly, it is hereby ordered that the motion is denied.

Signed _____, 2002

_____
UNITED STATES DISTRICT JUDGE



**U.S. Department of Justice**

Tax Division

SOUTHERN DISTRICT
FILED

02 FEB 21 AM 9: 1?

MICHAEL N. MILBY, CLERK

EJO'C:LPH:ALSobotka
5-76-28419
CMN 2000102769

Maxus Energy Tower
717 N. Harwood
Suite 400
Dallas, Texas 75201

Main Line. (214) 880-9721
Attorney's Direct Line
(214) 880-9736
Fax: (214) 880-9741/9742

February 20, 2002

**Federal Express**     5420965874

Michael N. Milby, Clerk
United States District Court
Southern District of Texas
600 E. Harrison, 1st Fl.
Brownsville, TX 78520

Re:   United States v. Grady F. Herold, Sr., et al.
      Civil No. B-01-053 (DC SD Texas - Brownsville Div.)

Dear Mr. Milby:

Enclosed are an original and two copies of the United States' Response in Opposition to Grady F. Herold, Sr.'s Motion to Amend Scheduling Order and Extend Discovery Deadlines. A proposed order denying the relief sought is also enclosed.

Please return a file stamped copy of these documents in the envelope provided. If you have any questions concerning this matter, please contact me at (214) 880-9736.

Sincerely yours,

Andrew L. Sobotka
Trial Attorney
Civil Trial Section
Southwestern Region

Enclosure