IN THE UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 24 2002

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff | § | |
| v. | § | CIVIL NO. B-01-053 |
| GRADY F. HEROLD, SR., et al., | § | |
|     Defendants | § | |

## UNITED STATES' TRIAL BRIEF

The United States, on behalf of its agency, the Internal Revenue Service, files this its trial brief as follows:

### Issues Presented

1. Whether the United States is entitled to foreclosure of its federal tax liens and/or its deed of trust against two tracts of South Padre Island property (the Property) solely owned by the delinquent taxpayer, the Estate of Lillian Schwartz (the Estate)?[1]

2. Whether the United States is entitled to appointment of a receiver to enforce the federal tax liens against the Property?

3. Alternatively, or in addition to a receiver, whether the United States is entitled to sell the Property under 28 U.S.C. § 2001 at public auction in order to satisfy the liens and claims against the Property?

---

[1] At her death, Lillian A. Schwarz owned, among other things, two tracts of real property located on South Padre Island, Cameron County, Texas. Tract I (the "Beach Property") consists of approximately 13.5 acres of beachfront property facing the Gulf of Mexico and located on the 300 block of Padre Blvd., South Padre Island, Texas, immediately adjacent to the Sheraton hotel. Tract II (the "Bayside Property") consists of approximately 9.95 acres of Laguna Madre waterfront property located south of the Queen Isabella Causeway (Hwy. 100) where the causeway enters South Padre Island. Tracts I and II are hereafter referred to collectively as "the Property."

A.   Brief Answer

Under 26 U.S.C. §§ 7403 and 7404, the United States is entitled to judgment, allowing it to foreclose its federal tax liens and its deed of trust against the Property, in order to satisfy the 16 year old, multi-million dollar federal tax liability of the Estate. The Estate has stipulated to the amount of its tax liabilities to all parties and to the validity of the IRS tax lien. The Estate and all other defendants agree that the Property must be sold to pay the debts against it, including the federal estate tax debt owed to the IRS.

Under 26 U.S.C. §§ 7402(a) and 7403(d), the United States is entitled to the appointment of a receiver to enforce the federal tax lien. The Estate has agreed not to oppose the appointment of a receiver provided that the receiver sell the Property via a private sale. The State of Texas also agrees. The only disagreement comes from Legendary, Inc.

In addition to, or as an alternative to, the appointment of a receiver, the United States is entitled to sell the Property under 28 U.S.C. § 2001 at public auction in order to satisfy the federal tax liens and claims against the Property, and to distribute the sale proceeds after costs consistent with the parties' stipulated priority for distribution.

B.   Legal Authority and Analysis for Foreclosure of the Federal Tax Lien

Section 2001(a) of the Internal Revenue Code imposes a tax on the taxable estate of every decedent who is a United States citizen. Once an estate tax return is filed and the taxes are assessed, the estate must pay the taxes in full or a statutory lien arises against the estate's property. 26 U.S.C. §§ 6321 and 6324. The United States may bring a civil action to enforce the tax lien under 26 U.S.C. §§ 7403 and 7404. In particular, 26 U.S.C. § 7403 authorizes a federal district court to order the judicial sale of property to satisfy the tax indebtedness of a delinquent taxpayer.[2] All persons having liens or claiming an interest in the property are made parties to the

---

[2]   Section 7403 addresses actions to enforce liens or to subject property to the payment of taxes and provides in relevant part:

>   The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.

suit. 26 U.S.C. § 7403(b). Under 26 U.S.C. § 7403(c), the district court "shall . . . finally determine the merits of all claims to and liens upon the property, and . . . may decree a sale of such property . . .." Moreover, a district court may order the sale of property in which a delinquent taxpayer has an interest in order to satisfy the taxpayer's debt even though an innocent third party also owns an interest in the property, so long as the third party receives compensation. United States v. Rodgers, 461 U.S. 677 (1983);[3] United States v. Bierbrauer, 936 F.2d 373 (8th Cir. 1991).

Here, the United States seeks foreclosure of its estate tax lien against the Property which is owned solely by the Estate. On August 24, 1985, Ms. Schwartz died. On May 29, 1986, her estate filed its federal estate tax return (Form 706) that reported a gross estate valued at $15,219,969 and a tax liability of $5,684,832. Consistent with that return, the Internal Revenue Service assessed taxes against the Estate on July 7, 1986, and the federal estate tax lien attached to all Estate property including the Property at issue here.[4]

Later, during 1988, this originally assessed amount of tax was reduced by agreement between the IRS and the Estate as a result of several agreed upon reductions in the value of the real estate which had been included in the gross estate for estate tax purposes. On August 8, 1988, the Estate signed and filed a Form 890 based on an agreed, albeit reduced, gross estate value of $10,374,869 and federal estate taxes payable of $3,408,321. However, despite notice

---

26 U.S.C. § 7403. Further, Treasury Regulation § 301.7403-1 provides:
    In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, the Attorney General or his delegate, at the request of the Commissioner ... or Chief Counsel for the Internal Revenue Service or his delegate may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under the Code with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title or interest, to the payment of such tax liability.
Treas. Reg. § 301.7403-1.

[3] In Rodgers, a delinquent taxpayer's spouse, who did not have any tax liability, objected to the judicial sale of the family home to satisfy her spouse's tax indebtedness. Id. at 687. She claimed a separate "homestead" interest in the home as provided by Texas state law. The court nevertheless ordered the sale and provided the non delinquent spouse was entitled to compensation for her ownership of a homestead interest in the property. Id. at 697-98.

[4] Additionally, on August 17, 1995, the Estate and all of the heirs executed a deed of trust ("Deed of Trust") for the Property in favor of the United States (IRS). On August 18, 1995, the Deed of Trust was recorded in the real property records of Cameron County, Texas.

and demand by the IRS for full payment, the Estate failed to pay its federal estate tax liabilities in full. The Estate continued in its refusal to pay, notwithstanding the years of extensions of time to pay granted by the IRS. Accordingly, as a last resort, the United States brought this proceeding against the Estate, its executor and heirs, seeking to foreclose the federal tax liens, as well as the deed of trust, against the Property. As required, the United States added as defendants all other creditors and persons having any claim in the Property.[5]

All issues of liability have been resolved through stipulations among the parties and that all parties agree the Property must be sold to satisfy the liabilities against it. Furthermore, the Estate has stipulated to the amount of its federal estate taxes and to the amount and continuing validity of the government's federal tax lien and deed of trust against it and the Property.[6] The parties have also stipulated to the priority of their claims against the Property and as such the priority for distribution of the sales proceeds.[7] Those stipulations are contained in the Joint Pretrial Order and form the United States' prima facie case at trial. With these stipulations and with the fact that the taxpayer here is the sole owner of the Property,[8] the United States is entitled to a judgment authorizing it to foreclosure of its federal tax lien against the Property.

---

[5] Those defendants include, the executor and heirs of the Estate on account of their interest in the Property; all local ad valorem property taxing authorities on account of liens for unpaid property taxes; the State of Texas on account of a lien for state inheritance taxes; Legendary, Inc., Legendary, SPI, Inc., and Legendary SPI, Ltd., on account of its contracts to purchase the Property and its eventual acquisition of the ad valorem tax liens.

[6] Gov. Ex. 21.

[7] The parties rank the claims against the Property in the following priority:
    A.    First, for ad valorem taxes, including:
        i.    although not yet due, any liens of the Ad Valorem Taxing Authorities arising out of 2002 should the Property be sold after they come due and their payment not be made as part of the sale; and
        ii.    the liens purchased by Legendary SPI, Ltd., from the Ad Valorem Taxing Authorities on April 17, 2002, in the amount of $629,823.51, plus interest at 8% per year accruing after April 17, 2002;
    B.    Second, the United States' federal tax lien and deeds of trust in the amount of the stipulated liability;
    C.    Third, the liens of the State of Texas in the amount described in its stipulation with the estate, &
    D.    Fourth, to the Estate and the Heirs.

[8] In Rodgers, the property at issue was jointly owned by both the delinquent taxpayer and a non-liable spouse. Thus, the Court was concerned with the ability of the Government to foreclose its tax lien against the entire property, in satisfaction of the tax debt owed by only one of the two owners of the property. Here, the property is solely owned by the delinquent taxpayer. Thus, no innocent owner exists that will be impacted by foreclosure.

Nevertheless, the United States anticipates that Legendary will ask the Court to not to order foreclosure of the tax liens. However, as discussed in more detail later, the United States is confident that after hearing Legendary's contentions and the evidence in this case, the Court will enter a judgment in favor of the United States and order a foreclosure of the tax liens against the Property. The only remaining issue to be decided will then be the manner by which the Property is to be sold. Ordinarily, upon obtaining a judgment authorizing foreclosure of its liens, the United States would simply ask the Court for an order of sale authorizing the United States' Marshals Service to sell the property by public auction under 28 U.S.C. § 2001. However, because of the previous agreements it has made with the Estate, the United States is asking the Court for the appointment of a receiver under the provisions of 26 U.S.C. § 7403 to market the Property and sell it free and clear of all liens and claims by private sale. Of course if Estate attempts to oppose the appointment of a receiver at trial, then, the United States would consider itself no longer obligated to seek a receiver, and instead request a more immediate sale by public auction. Additionally, the United States will ask that the judgment contain an option for the possibility of dissolving or modifying the receivership for this Property by subsequent motion and order should it become evidence that the receiver is not able to obtain a private sale of the Property within a reasonable time.

C.   <u>Legendary's Anticipated Opposition to Foreclosure of the Tax Liens</u>

At the outset it is important to understand that Legendary has two potential interests in the Property. Originally, the United States sued Legendary, Inc., because of a putative contract to purchase the Property which was allegedly entered into between the Estate and Legendary in November of 2000. The evidence will show that this contract was scheduled to close during June of 2001, that Legendary did not close as required, and that no amendment was ever agreed to by the Estate. The United States has also sued Legendary SPI, Inc., because in November of 2001, almost one year after the first alleged contract, Legendary SPI, Inc., entered into a second contract with the Estate for the purchase of the Property. However, Legendary SPI, Inc., has not yet become an owner of the Property by closing and the United States anticipates that the

5

evidence will show that Legendary SPI, Inc., has not even decided if it will close. Indeed, the position taken by this entity in the pretrial order is that it should be given another 12 months to decide if it will close. Accordingly, Legendary SPI, Inc., either has no interest in the Property, or merely has a contingent interest in the Property. As discussed below, this type of an interest lacks sufficient standing to prevent the foreclosure of its federal tax liens.

Finally, Legendary, SPI, Ltd., recently acquired the liens previously held by the ad valorem taxing authority defendants. Originally, the United States named local ad valorem tax authorities (the Taxing Units)[9] as defendants because they held a valid property tax lien against the Property.[10] Ironically, when the Taxing Units filed a motion for summary judgment, Legendary, Inc., did not oppose it, and instead agreed to it despite its apparent interest in still acquiring the Property through its related entity Legendary SPI, Inc. More importantly, that agreed judgment gave the Taxing Units the same right of foreclosure which the United States now seeks and which Legendary and its related entities oppose. Within a few days after the United States filed its motion for the appointment of a receiver, Legendary SPI, Ltd., purchased the Taxing Units's liens in exchange for a payment of $629,823.51. As a result of this transaction, Legendary SPI, Ltd., holds the Taxing Units' lien position[11] in the amount of $629,823.51, plus interest at 8% per year accruing after April 17, 2002.[12]

As the Supreme Court in Rodgers points out, while district courts have some equitable discretion in 26 U.S.C. § 7403 proceedings, "the limited discretion accorded by § 7403 should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in

---

[9] These defendants included Cameron County, Cameron County Emergency Services, Southmost Union Junior College District, South Texas Independent School District, Point Isabel Independent School District, Laguna Madre Water District and the Town of South Padre Island ("Taxing Units").

[10] In addition, at the time this suit was commenced in federal court, the Taxing Units had filed suit in state court to gain a judgment and to foreclose its property tax liens. That proceeding was dismissed by the Taxing Units after they obtained an agreed judgment in this case.

[11] Although Legendary SPI, Ltd., purchased the liens, it did not purchase the judgment in favor of the Taxing Units.

[12] If the Property is not sold by October 1, 2002, new ad valorem taxes for 2002 become payable on the Property, and are delinquent if not paid by February 1, 2003. These taxes would have priority over all other interests.

prompt and certain collection of delinquent taxes."[13] The Estate's interest as the delinquent taxpayer must not interfere with the government's right to collect its taxes after 16 years of waiting. To the extent that the Estate complains or asks this Court to use its discretion to delay foreclosure, the statement made by the Supreme Court in Rodgers is applicable: "We can think of virtually no circumstances, for example, in which would be permissible to refuse to authorize a sale simply to protect the interests of the delinquent taxpayer. . ."[14] Moreover, in this instance, the taxpayer agrees the Property must be sold to pay the federal estate taxes (as well other claims against it). Thus, the United States is entitled to judgment allowing foreclosure of its federal tax liens against the Property.

That result is particularly immune to complaints voiced by Legendary and its related entities, Legendary SPI, Inc. and SPI, Ltd., that have no present ownership interest in the Property but hold a recently purchased lien from the Taxing Units and a putative, unsecured contract right to purchase the Property in May 2003. The parties have stipulated that Legendary SPI, Ltd.'s recently acquired ad valorem tax liens have first priority in the order of distribution for any sale proceeds (after costs) of the Property. Accordingly, Legendary SPI, Ltd., will not be prejudiced by the Property's sale in foreclosure of the federal tax liens. Instead, SPI is the only party guaranteed of being fully paid its lien interest under any sale scenario. Accordingly, the focus must be on whether Legendary SPI, Inc., can present sufficient justification for the court to exercise its very narrow discretion to not order foreclosure of the federal tax liens.

---

[13] Rodgers, 461 U.S. at 711. The public has an interest in the prompt collection of tax revenues. See Franchise Tax Board of California v. United States Postal Service, 467 U.S. 512, 523 (1984) ("taxes are the life-blood of government, and their prompt and certain availability an imperious need") (quoting Bull v. United States, 295 U.S. 247, 259-60 (1935)). This action seeks to collect taxes dating back to 1985.

[14] Rodgers, 461 U.S. at 709.

Before the Court exercises any discretion under 26 U.S.C. § 7403 to refrain from ordering foreclosure, the Court should first consider the factors discussed by the Supreme Court in Rodgers.[15] Those factors were:

1) the extent to which the government's financial interest would be prejudiced if it were relegated to a forced sale of the delinquent taxpayer's partial interest actually liable for the delinquent taxes;

2) whether the non-delinquent spouse has a "legally recognized expectation" that her interest would not be subject to a forced sale by the delinquent taxpayer or that person's creditors;

3) the possibility of under compensation to the third party, as well as the extent of personal dislocation costs; and

4) whether, after comparing the relative character and value of the separate property interests of the delinquent taxpayer and spouse, the government would be dispossessing an innocent third party who has a substantially greater possessory or fee interest than the delinquent taxpayer's interest.

Rodgers, 461 U.S. at 710-11.

To the extent that these factors apply, the evidence in this case will demonstrate that these factors do not weigh in favor of Legendary's position and that this Court should not exercise its limited discretion in their favor.

First, this case does not involve partial ownership interests; the government is entitled to sell the entire Property because the Estate is the sole owner of the Property. Thus, this factor is not applicable in this case. Second, neither Legendary, Inc., Legendary SPI, Inc., or Legendary, SPI, Ltd., can claim a reasonable expectation that this Property would not be subject to foreclosure for the unpaid taxes. The IRS tax liens and deed of trust were recorded before any Legendary entity acquired any interest in the Property. Indeed, the second contract on the Property was entered into long after Legendary Inc, has been made a party to this foreclosure

---

[15] It may be that the Rodgers case is limited in its application to the case at bar such that no basis exists to deny the government judgment and foreclosure on its terms. In Texas, a homestead property right constitutionally remains the most protected species of property. The forced sale of a homestead brings the highest level of scrutiny from the courts. In stark contrast, commercial, unimproved real estate like the Property at issue here may be sold at a tax sale without the attendant homestead concerns addressed in Rodgers.

action because of the first contract. Third, no personal dislocation is involved in this case. More importantly, Legendary SPI, Inc., and Legendary SPI, Ltd.'s interests are unlikely to be under compensated. Legendary can protect itself from this risk by entering a contract with the receiver or by bidding for the Property at public sale. United States v. Hunwardsen, 39 F. Supp. 2d 1157, 1162 (N.D. Iowa 1999) (the ability to bid for the property protects the interests of would be buyers). In fact, if their arguments are to be believed, they should be able to obtain the Property from a receiver or at public auction for less than the price they have presently agreed to pay for the Property. Fourth, Rodgers asks the Court to evaluate the relative character of and value of the non liable and liable interests held in the Property. Here, third parties hold no possessory interest or fee interest in the Property; accordingly, as the Rodgers court declared "there may be little reason not to allow the sale," Rogers, 461 U.S. at 711. Indeed, Legendary, SPI, Inc., has not even made a deposit or place any funds in escrow as part of its attempt to purchase the Property. On the other hand, new ad valorem taxes and additional interest will accrue against the Property during the next 12 months while Legendary SPI, Inc., decides if it wants to close and become an owner of the Property. As such, the United States and the State of Texas are being asked by Legendary to bear all of the risk of that increased debt against the Property, while Legendary and its related entities attempt to build value which will benefit only themselves and the Estate. Such a scenario is highly prejudicial to the United States and supports the authorization of an immediate foreclosure rather than the 12 month delay being sought by Legendary.

      The estate tax debt owed to the United States is 16 years old. Waiting yet another year for the pending contract for the sale of the Property to Legendary, SPI, Inc., to close is completely unreasonable and prejudicial to the United States and even more prejudicial to the State of Texas. Legendary, and its related entities have already failed to comply with the requirements and time frames of the two contracts they entered into for the purchase of this Property. Yet, they have been allowed to tie up the Property for almost 2 years without putting up any deposit or taking any risk. At the same time, the equity in the Property for the United States' lien, and the State of Texas' lien is rapidly being eroded by the continual accrual of new

action because of the first contract. Third, no personal dislocation is involved in this case. More importantly, Legendary SPI, Inc., and Legendary SPI, Ltd.'s interests are unlikely to be under compensated. Legendary can protect itself from this risk by entering a contract with the receiver or by bidding for the Property at public sale. United States v. Hunwardsen, 39 F. Supp. 2d 1157, 1162 (N.D. Iowa 1999) (the ability to bid for the property protects the interests of would be buyers). In fact, if their arguments are to be believed, they should be able to obtain the Property from a receiver or at public auction for less than the price they have presently agreed to pay for the Property. Fourth, Rodgers asks the Court to evaluate the relative character of and value of the non liable and liable interests held in the Property. Here, third parties hold no possessory interest or fee interest in the Property; accordingly, as the Rodgers court declared "there may be little reason not to allow the sale," Rogers, 461 U.S. at 711. Indeed, Legendary, SPI, Inc., has not even made a deposit or place any funds in escrow as part of its attempt to purchase the Property. On the other hand, new ad valorem taxes and additional interest will accrue against the Property during the next 12 months while Legendary SPI, Inc., decides if it wants to close and become an owner of the Property. As such, the United States and the State of Texas are being asked by Legendary to bear all of the risk of that increased debt against the Property, while Legendary and its related entities attempt to build value which will benefit only themselves and the Estate. Such a scenario is highly prejudicial to the United States and supports the authorization of an immediate foreclosure rather than the 12 month delay being sought by Legendary.

      The estate tax debt owed to the United States is 16 years old. Waiting yet another year for the pending contract for the sale of the Property to Legendary, SPI, Inc., to close is completely unreasonable and prejudicial to the United States and even more prejudicial to the State of Texas. Legendary, and its related entities have already failed to comply with the requirements and time frames of the two contracts they entered into for the purchase of this Property. Yet, they have been allowed to tie up the Property for almost 2 years without putting up any deposit or taking any risk. At the same time, the equity in the Property for the United States' lien, and the State of Texas' lien is rapidly being eroded by the continual accrual of new

property taxes and interest on the existing lien debts. The sale to Legendary, SPI, Inc., is not scheduled to close before the 2002 property taxes fall due. The United States will present evidence that these taxes will be at least $60,000 on which penalties and interest which would rapidly accrue if the base tax is not paid by February 1, 2003.[16] Legendary's secured claim will earn 8% interest over the next 12 months thus creating approximately $ 50,000 in additional debt on the Property. Additional interest of approximately $176,000 will accrue on the United States' claim over the next 12 months, and additional interest of approximately $32,000 will accrue on the State's claim over the next 12 months. In total, there will be at least $318,000 in new debt on the Property at the end of 12 months. Thus, if Legendary is given another year to decide whether it wants to purchase the Property, and then decide not to close for what ever reason, it is very likely there would no longer be sufficient equity in the Property to satisfy the continually growing claims of the United States and the State of Texas. In such case, the United States would be forced to foreclose on the Estate's other property. A protective suit designed to do exactly that was file earlier this year (Case No. B -02-015), and in such case, it is likely that there would be nothing left over for the Estate or the Heirs.

 Finally, it is important to note that a decision by the Court to overrule Legendary's objection to foreclosure would be supported by the existence of another offer to purchase the Property on a much shorter time frame, with a sales price that may be sufficient to satisfy all claims against the Property, including the federal and state tax liabilities and allow the Estate to retain its other assets.

D. <u>Appointment of Receiver vs. Order for Public Auction</u>

 Once is determined that the United States is entitled to foreclose its tax liens, then the manner in which those liens are foreclosed must be decided. In this case the United States is seeking one of two alternatives. The appointment of a receiver under 26 U.S.C. § 7403 to market and sell the Property free and clear of all liens and claims via a private sale, or

---

[16] Tex. Prop. Tax. Code Ann. § 33.01(a), and § 33.07.

alternatively, an order for sale by public auction under 28 U.S.C. § 2001.[17] While the Court also has discretion in setting the terms and conditions of a foreclosure sale under 26 U.S.C. § 7403 and 28 U.S.C. § 2001, that discretion must be guided by two very important considerations. First, as noted by the Supreme Court, the federal policy behind 26 U.S.C. § 7403 is to provide the federal government with the "opportunity to seek the highest return possible **on the forced sale** of property interests liable for the payment of federal taxes." Rodgers, 461 U.S. at 699 (emphasis added). Second, the United States, and not the Court, is to decide whether it would be more advantageous for the government to enforce its rights to have property sold rather than to delay for some prospective financial benefit. United States v. Sawyer, 243 F. Supp. 462 (D. Ma. 1965).

As noted above, the United States' preference at this time is to enforce its tax liens through the appointment of a receiver under 26 U.S.C. § 7403 to market and sell the property free and clear of all liens and claims via a private sale. The appointment of a receiver to enforce federal tax liens is authorized by 26 U.S.C. § 7403.[18] In addition, 26 U.S.C. § 7402(a) also gives the Court the power to issue "orders appointing Receivers, and such other orders and processes . . . as may be necessary or appropriate for the enforcement of the Internal Revenue laws."

Here, the Estate and the State of Texas do not oppose the appointment of a receiver. Only Legendary opposed the United States' motion for a receiver. The crux of Legendary's argument is that all parties should be forced to wait until May 2003 to discover if Legendary will close on its contract to buy the Property because in that instance all parties will profit. That argument is patently absurd because only Legendary and the Estate would stand to benefit from such a delay while the United States and Texas will receive no more than the amount of their lien claims and

---

[17] Section 2001 provides as follows:
(a) Any realty or interest therein sold under any order or decree of any court of the United States shall be sold as a whole or in separate parcels at public sale at the courthouse of the county, parish, or city in which the greater part of the property is located, or upon the premises or some parcel thereof located therein, as the court directs. Such sale shall be upon such terms and conditions as the court directs.
28 U.S.C. § 2001(a) (1994).

[18] A receiver is also authorized under 28 U.S.C. 2001 but appears to have less flexibility in that it makes it more difficult for a receiver to sell property by private sale rather than by a public auction.

may receive less than those claims if Legendary does not close and the Property cannot be sold to cover the existing amount of those claims plus the additional debts which will accrue against the Property during Legendary's requested "inspection period". While the United States respects Legendary's desire to obtain permits and eventually develop the Property, the United States and the State of Texas cannot be required to assume all of the risks associated with the possibility that Legendary will not close on the Property after another 12 months of inspection when Legendary has the "sole discretion" to decide if the Property is suitable for its needs,[19] and stands to lose no escrow deposit if it does not close. Indeed, should Legendary decide that the color of the sand on the Property was not quite to its liking, it could walk away from the deal and leave the other parties in a substantially worse position than they are today.

On the other hand, the appointment of a receiver would not prevent Legendary from purchasing the Property and subsequently developing it. However, any such purchase would have to be on terms that did not prejudice the United States and Texas, and at the same time, a receiver would permit the consideration of other offers.

The alternative to foreclosure of the tax liens through the appointment of a receiver is a public auction under 28 U.S.C. § 2001. It appears that the Estate does not desire this alternative because of its current concern that a public auction would not bring as high of sales price. As noted in the discussion of the law above, such a concern by the Estate does not prevent foreclosure by public auction. However, in this case, the United States has agreed to see if a receiver can sell the Property on suitable terms by a private sale before proceeding with a public auction.

Legendary SPI, Ltd.'s secured claim is protected by a public auction because the parties have stipulated that Legendary's lien has first priority. Moreover, because Legendary SPI, Inc., has not yet decided whether it will purchase the Property, and has not begun any actual development, it cannot be prejudiced by the loss of something it does not yet have. In fact, Legendary should prefer to have a receiver appointed because a private sale through a receiver

---

[19] U.S. Exhibit 19, ¶ 4.1, page 4.

may give Legendary a more flexible opportunity to acquire the Property on terms that are different than the existing contract, but which are still more palatable to Legendary than an outright cash purchase at an auction.

## Summary

The United States seeks to be compensated for the tax liabilities already stipulated to be due and owing, and has elected to obtain that satisfaction by a judicial sale of property by having a receiver appointed under 26 U.S.C. § 7403 to enforce those liens by marketing and selling the Property free and clear of all liens and claims via a private sale. Delaying the enforcement of those liens, as requested by Legendary, would be prejudicial to the United States. Such delay would only benefit Legendary to the potential detriment of the United States and the State of Texas.

_____
Andrew L. Sobotka
Texas Bar No. 18819900
Manuel P. Lena Jr.
Texas Bar No. 12201255
Attorney, Tax Division
U. S. Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201
214/880-9750 or 9721[9741fax]
Attorney for United States (IRS)

## Certificate of Service

IT IS HEREBY CERTIFIED that service of the foregoing document has been made on June 24, 2002, by hand delivery to:

Larry Sherlock
Chamberlain Hrdlicka
1200 Smith Street, Suite 1400
Houston, TX 77002-4401

David C. Garza
Garza & Garza, LLP
P.O. Box 2025
680 East St. Charles, Suite 300
Brownsville, TX 78522

Kent M. Rider
Linebarger Heard
P.O. Box 17428
Austin, Texas 78760

David Randell
Asst. Attorney General
Bankruptcy & Collections Div.
P.O. Box 12548
Austin, Texas 78711-2548

Andrew L. Sobotka