IN THE UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 0 9 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff | § | |
| v. | § | CIVIL NO. B-01-053 |
| GRADY F. HEROLD, SR., et al., | § | |
|     Defendants | § | |

## UNITED STATES' OBJECTION TO LEGENDARY'S PROPOSED JUDGMENT

The United States objects to the proposed judgment submitted by Legendary to the Court's case manager on July 3, 2002, for the following reasons:

1.  The United States objects to paragraph 3 of Legendary's proposed judgment because it fails to include the fact that in addition to seeking foreclosure of its federal tax liens, the United States also held deeds of trust on which it sought foreclosure. Accordingly, the United States requests that paragraph 3 be changed to read[1] as follows:

> That the estate tax lien *and deed of trust* asserted by the United States of America and the inheritance tax lien asserted by the State of Texas upon the two tracts of property owned by the Estate of Lillian A. Schwarz (Estate) that are described in the attached Government Exhibit 1 (the Property) are hereby foreclosed, subject to ~~Section~~ *paragraph* 4 hereinafter.

2.  The United States objects to paragraph 4 of Legendary's proposed judgment because it fails to make June 25, 2003 the last date for Legendary and the Estate to close the November 16, 2001, contract for sale of the Property (the Contract). In its ruling from the bench, the Court stated that it would appoint a receiver but not until the earlier of June 25, 2003, or

---

[1] Additions are in italics and bold, while deletions are in strike out format. The United States is also submitting a proposed judgment which contains these changes.

1

termination of the Contract by Legendary. In doing so, the United States understood that the Court was establishing a "date certain" by which Legendary had to close, or the federal tax liens could be enforced. In order to get the relief it desired at trial, Legendary downplayed the possibility of any extensions beyond the June 25, 2003 date, which was derived through the presentation of evidence and argument over the terms of the Contract at trial. Indeed, the lien creditors suggested that there were provisions in the Contract which might give Legendary even more time than the initial 18 months for inspection and 30 days thereafter to close (with a total of 12 months remaining at the time of trial on June 24, 2002). In response, Legendary argued that at most only 10 days should be added on to the remaining 12 months because the Contract had been in effect for only 10 of the days the bridge was closed. It was from these arguments and evidence that the June 25, 2003, date was derived. Now, after hiding behind the log to convince the Court that it should have until June 25, 2003, to close its second contact for the Property, Legendary asserts that it may need to rely on other provisions in the Contract for an extension of the closing date beyond June 25, 2003. Legendary cannot have it both ways. Legendary was required to make these arguments at trial, to explain the need for such additional time at trial, and to support such alleged need with evidence at trial. Doing so would have allowed the United States and the State to challenge that evidence and to make rebuttal arguments. Instead, Legendary and the Estate waited until after the trial to assert the possibility of needing more time than the 12 months already granted them by the Court. As an excuse, they suggest that they may need additional time to clean up title defects, and apparently rely on the language in Section 5.1 of the Contract for this example.[2]

---

[2] *See* U.S. Exhibit 19.

Section 5.1 of the Contract required the Estate to provide a title report to Legendary within 60 days (by January 16, 2002) and Legendary to object to any title defects within another 60 days (by March 16, 2002). Astonishingly, during the process of drafting a proposed judgment, counsel for the Estate disclosed that none of the events contemplated by Section 5.1 of the Contract had taken place as of July 3, 2002! Assuming that the Contract is not already in default and such events can still take place,[3] Section 5.1(c) of Contract gives Legendary the sole discretion to extend closing for an unspecified period to resolve any title exceptions. Accordingly, the language in paragraph 4 of Legendary's proposed judgment would effectively give Legendary the ability to create and determine the length of an extension beyond June 25, 2003.

The United States has already informed Legendary, such an open ended closing date would be wholly unacceptable to the United States and would guarantee an appeal recommendation by its attorneys. Nevertheless, Legendary still pushed forward with the objectionable language in its proposed judgment, further demonstrating Legendary's unwillingness to make a commitment that the United States and the State of Texas will continue to experience if the Court does not impose a date certain for closing. Accordingly, the United States recommends that paragraph 4 of the Proposed Judgment be changed to read as follows:

> That the appointment of a receiver pursuant to 26 U.S.C. §7403 or a sale under 28 U.S.C. 2001 shall not take place until the occurrence of the earlier of the following (the occurrence of which shall constitute a "Trigger Event") (a) ~~the expiration of the rights of Legendary SPI, Inc. ("Legendary") to purchase the property without the purchase having occurred under the terms of the November~~

---

[3] Section 5.1 does not give either party the power to extend the initial 60 days for the Estate to provide the title report. Rather, it merely gives Legendary the right to extend closing if such a title report has been generated and additional time is needed to cure title defects.

3

~~16, 2001 Agreement between the Estate and Legendary (the "November 16, 2001 Agreement")~~ *June 25, 2003*, or (b) upon *notice or* application to the Court ~~and a showing~~ that the November 16, 2001, contract between the Estate and Legendary SPI, Inc. ~~is~~ *has been* terminated. ~~Legendary's rights shall expire on the earlier to occur of (i) the stated expiration date of June 25, 2003 (the "Outside Closing Date"), or (ii) the earlier termination by Legendary as authorized by the November 16, 2001 Agreement; provided, however that if there is any extension of the Outside Closing Date by the terms of the November 16, 2001 Agreement (as, for example, if the estate requires additional time to cure a title defect) then the June 25, 2003 date shall be extended as provided in the November 16, 2001 Agreement.~~ Legendary and the Estate shall promptly notify the Court in writing with copies sent to the other parties of any termination ~~or extension~~ of the November 16, 2001, agreement.

3. Finally, the United States objects to paragraph 6 of Legendary's proposed judgment because it does not contain a provision for the payment of ad valorem property taxes which will accrue on the Property beyond the 2002 year if the sale of the Property is not completed before June 25, 2003. The United States requests that paragraph 6 be changed to read as follows:

> That the sale proceeds shall be distributed in the following priority:
> (a) to payment of the expenses of sale;
> (b) pro rata, to
>> (i) Legendary SPI, Ltd. in the amount of $629,823.51, together with interest at the rate of 8% per annum from April 17, 2002, and
>> (ii) Cameron County, Texas, Laguna Madre Water District, Cameron County Emergency Services, Southmost Union Jr. College District, Point Isabel Independent School District, the Town of South Padre Island, South Texas Independent School District and the Cameron County Appraisal District ("the property taxing jurisdictions") in the amount of any unpaid and past due ad valorem property taxes assessed on the Property for calendar year 2002 *and subsequent years* or to the holder of said Ad Valorem Tax liens for such taxes if the liens are not held by the property taxing jurisdictions;
> (c) to the United States of America up to the amount stated in paragraph 1;
> (d) to the State of Texas up to the amount stated in paragraph 2; and
> (e) any funds remaining to the Estate.

## Prayer

For the reasons stated above, the United States prays that the Court reject the proposed judgment submitted by Legendary on July 3, 2002, and the Court adopt the attached proposed judgment submitted by the United States.

*Andrew Sobotka* (signature)
Andrew L. Sobotka
Texas Bar No. 18819900
Manuel P. Lena Jr.
Texas Bar No. 12201255
Attorney, Tax Division
U. S. Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201
214/880-9750 or 9721[9741fax]
Attorney for United States (IRS)

## Certificate of Service

IT IS HEREBY CERTIFIED that service of the foregoing document has been made on July 8, 2002, by mailing a copy to:

Larry Sherlock
Chamberlain Hrdlicka
1200 Smith Street, Suite 1400
Houston, TX 77002-4401

David C. Garza
Garza & Garza, LLP
P.O. Box 2025
680 East St. Charles, Suite 300
Brownsville, TX 78522

Kent M. Rider
Linebarger Heard
P.O. Box 17428
Austin, Texas 78760

David Randell
Asst. Attorney General
Bankruptcy & Collections Div.
P.O. Box 12548
Austin, Texas 78711-2548

_____
Andrew L. Sobotka